JOSEPHINE S. DOUGLAS et al., Appellants, *v.* THE KNICKER-BOCKER LIFE INSURANCE COMPANY, Respondent.

On October 1, 1868, defendant issued an endowment policy on the life of T. which contained a condition declaring it void in case the insured should "travel upon the seas," without the written consent of the company previously obtained. · Upon the back of the policy was also a stipulation to the effect that if, after three or more annual premiums had been paid, the policy should cease "in consequence of the non-payment of premiums," the company would, upon its surrender, issue a new policy for the full value acquired under the old one. The annual premiums were paid up to, and including, the one due October 1, 1875. In September, 1875, T., without obtaining the consent of the company, and without its previous knowledge or subsequent assent, went to Spain. Plaintiffs, in August, 1877, offered to surrender the policy and demanded a paid up policy for eight-tenths of the amount of its amount, which was refused. In an action to enforce specific performance of such stipulation, *held*, that the policy and all rights under it were forfeited by the violation of said condition; and that even if a court of equity would, in any case, relieve against such a forfeiture, it was not authorized to do so here as it was not incurred by accident, ignorance, mistake, or any overpowering necessity.

Also, *held*, that the stipulation did not constitute a separate and independent contract, but was to be taken in connection with the provision in the body of the policy, all constituting but one contract.

Also, *held*, that the premiums paid were forfeited, although it was not so expressly provided in the policy.

In reference to certain other conditions, some of which were conditions subsequent, it was expressly stated in the policy that in case of their violation, the premiums should be forfeited. *Held*, that the absence of this express provision, in reference to the condition in question, did not justify an inference that such a forfeiture was not intended.

So, also, *held*, that the fact that as to certain other conditions it was expressly stated that its violation would work a forfeiture, "without notice" did not raise a presumption that the forfeiture here would not follow without notice, it appearing that there was an apparent purpose for the insertion of the express stipulation.

When the last premium was paid in October, 1875, defendant gave a receipt, using a printed blank in general use by the company, which stated, in substance, that the policy was thereby continued in force for one year, subject to a condition forfeiting it in case any obligation given for premiums should not be paid when due. *Held*, that this receipt did not have the effect to relieve from the forfeiture and continue the policy in force for the year, but only continued it so far as depended upon the payment of premiums.

On the back of the policy was printed a statement that permits would be granted by the company "on reasonable terms" for persons insured "to make voyages to any foreign country." It was claimed by plaintiff that a forfeiture of the policy was not caused by a failure to obtain such a permit before the forbidden travel, but that the trial court should have ascertained what a reasonable charge would have been for the permit and have allowed it to defendant. *Held,* untenable ; that the defendant could not only make a reasonable charge for a permit, but could impose other conditions ; and the terms were so far in its discretion that unless it unreasonably refused a permit the court could not interfere ; and as no permit was asked for, and the company was thus deprived of the opportunity to fix terms, there was nothing for a court of equity to act upon.

(Argued December 20, 1880; decided January 18, 1881.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made June 13, 1879, affirming a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term. (Reported below, 13 J. & S. 313.)

The nature of the action and the facts appear sufficiently in the opinion.

*Robert Sewell* for appellants. The actual agreement *inter partes,* in pursuance of which the appellants were to become beneficiaries under the policy of life assurance, issued to them by the respondent, did not contemplate a contract that was to be at the outset and remain throughout its career an entirety. (*Union Mutual Life* v. *Mowry,* 96 U. S. 547; *Worsley* v. *Ward,* 6 Term. R. 710; *Mutual Life* v. *Miller,* 39 Ind. 475; *Jennings* v. *Chenango Mutual,* 2 Denio, 75; *Patch* v. *Phœnix Mutual,* 44 Vt. 481; *Braunstein* v. *Accidental,* 2 Big. 610; Bliss on Life Ins., § 58; *People* v. *Utica Ins. Co.,* 15 Johns. 358; *Ins. Co.* v. *Gridley,* 100 U. S. 115; *Hay* v. *Star Fire,* 77 N. Y. 240.) Even if the original agreement be viewed as an entirety from the date of its making, it was severable on a possibility, and it actually became severed when the contingency (on which such severance depended) was favorably determined. (*Denbrow et al.* v. *McDonald,* 5 Bosw. 130; *Winne et al.* v. *McDonald,* 39 N. Y. 233; Story on Con-

tracts, § 25, d; *Badger* v. *Titcomb*, 15 Peck. 414; *Cooke* v. *Whormwood*, 2 Saund. 337; *Rudder* v. *Price*, 1 H. Blacks. 550; *Johnson* v. *Johnson*, 3 B. & P. 162; 2 Pars. on Cont. 528; *Chanter* v. *Leese*, 4 Mees. & Wels. 311; *Duke of St. Albans* v. *Shore*, 1 H. Blacks. 272; *Boone* v. *Eyre*, 2 W. Blacks. 1312.) To avoid the policy, for any other cause than the non-payment of annual premium and to make such avoidance binding on the beneficiaries, it was incumbent on the respondent to give them notice thereof, within a reasonable time thereafter. (*Ins. Co.* v. *Eggleston*, 96 U. S. 572; *Fifty Associates* v. *Howland*, 5 Cush. 214; *Rœhner* v. *Knickerbocker Life*, 4 Daly, 515.) Forfeitures are not favored in unilateral contracts. (*Frœlich* v. *Atlas Life*, 47 Md. 406.) The construction of forfeiture is *strictissimi juris*. (*Hoffman* v. *Ætna Life*, 32 N. Y. 414; *Catlin* v. *Springfield Fire*, 1 Sumner, 441; *McAllister* v. *N. E. Mutual*, 101 Mass. 855; *Kentucky Mutual* v. *Jenks*, 5 Ind. 103; *Knickerbocker Life* v. *Norton*, 96 U. S. 234, *Thompson* v. *St. Louis Mutual*, 52 Mo. 469; *Mutual Benefit Life* v. *Robertson*, 59 Ills. 123; *Home Life* v. *Pierce*, 75 id. 423; *Chicago Life* v. *Warner*, 80 id. 410; *Fowkes* v. *M. & L. Life*, 3 Best & S. 917; *Dilleber* v. *Home Life*, 69 N. Y. 256.) The surrender proffered of the old policy was the duty performed in time by, and the demand for a paid-up policy was of consequent right in the beneficiaries. (*Dorr* v. *Phœnix Mutual Life*, 67 Me. 438; *Shaw* v. *Republic Life Ins. Co.*, 69 N. Y. 287; *Haynes* v. *Am. Pop. Life Ins. Co.*, id. 435; *Hay* v. *Star Fire*, 77 id. 239; *Phœnix Mutual* v. *Baker*, 85 Ill. 414.) The original inchoate rights of election vested then in the beneficiaries, by virtue of their giving the first notice, and so determined the policy and any future election under it by the respondent. (*Flynn* v. *Equitable*, 78 N. Y. 568; Story's Eq. Jur., § 323; *Griffith* v. *Robins*, 3 Mad. 191; *Burke* v. *Rogerson*, 12 Jur. [N. S.] 635; S. C., 14 L. T. [N. S.] 780; *Hay* v. *Star Fire*, 77 N. Y. 202.) The first memorandum was a continuing policy up to the first day of October, 1876. (*Viele* v. *Germania Ins. Co.*, 26 Iowa, 9–74; *Frost* v. *Saratoga Mutual*, 5 Den. 154;

*Viall* v. *Genesee Mutual*, 19 Barb. 440 ; *Sheldon* v. *Atlantic*, 26 N. Y. 460 ; *Carpenter* v. *Providence Wash. Ins. Co.*, 16 Peters, 509 ; *Welch* v. *Ætna Life*, 30 Iowa, 133 ; *Carroll* v. *Charter Oak*, 40 Barb. 231 ; 1 Abbt. Ct. of App. Cas. 316 ; *Mesereau* v. *Phœnix Mutual*, 66 N. Y. 278 ; *Globe Mutual L.* v. *Wolff*, 95 U. S. 329 ; *Wing* v. *Harvey*, 5 De G. M. &. G. R., 265 ; 27 Eng. Law and Equity, 140 ; *Hodsdon Admx.* v. *Guardian Life*, 97 Mass. 144 ; *Knickerbocker Life Ins. Co.* v. *Norton*, 96 U. S. 240 ; *Boehen* v. *Williamsburg Ins. Co.*, 35 N. Y. 131 ; *Ranson* v. *N. Y.*, 4 Blatchf. 157 ; *Mead* v. *N. Wm. Ins. Co.*, 7 N. Y. 530 ; *Bidwell* v. *Wm. Ins. Co.*, 19 id. 179 ; *Mutual Benefit* v. *French [Ohio]*, 6 Ins. Law J. 550 ; *Ryley* v. *Ætna Ins. Co.*, 29 Barb. 557 ; 37 N. J. 469 ; *Young & Co.* v. *Hartford F. I. Co.*, 6 Ins. L. J. 547 ; 45 Iowa, 377 ; *Williamsburg City F.* v. *Carey*, 6 Ins. L. J. 492 ; 83 Ill. 453 ; *Ætna* v. *Maguire*, 57 Ill. 342 ; *West Rockingham Mutual Fire Ins. Co.* v. *Shiets & Co.*, 26 Gratt. 874 ; 2 Smith's Lead. Cas. Wallace's notes, 74 ; *Levy* v. *Peabody Ins. Co.*, 6 Ins. L. J. 773 ; *Ruse* v. *Mutual Benefit Ins. Co.*, 26 Barb. 556 ; *Buckbee* v. *U. S. Ins. Co.*, 18 Barb. 541.) The second memorandum of contract will be upheld as against all claims of forfeiture from any cause. (*Little* v. *M. Western Mutual*, 5 Bigelow, 141 ; 5 Rep. No. 9, p. 262 ; *Ohde* v. *N. W. Mutual*, 5 Big. 145 ; *Bonner* v. *Same*, 3 Cent. L. J. 801; *Dutcher* v. *Brooklyn Life*, 2 id. 801; *St. Louis Mutual* v. *Greigsby*, Ct. of Appeal [Kent], 4 Big. 636–8 ; *Thompson* v. *St. Louis Mutual*, 52 Mo. 469 ; *Moses* v. *Brooklyn Life*, 50 Ga. 196 ; 5 Big. 67 ; *McAllister* v. *N. Eng. Mutual*, 101 Mass. 561 ; *Hull* v. *North-Western Mutual*, 39 Wis. 397; *Kirkpatrick* v. *Knickerbocker Life*, 6 Ins. L. J. 368, Tenn. 75 ; *Wheeler* v. *Conn. Mut. Life*, 16 Hun, 317, 331 ; *Post* v. *Ætna Ins. Co.*, 43 Barb. 351.) The time for the surrender of the old, and the delivery of a paid-up policy having expired before the rendition of judgment, the appellants were entitled to one as in the nature of damages under the general relief sought, for the value of the fund accumulated on the 1st of October, 1875. (*Goodwin* v. *Mass. M. Life*, 73 N. Y. 487 ;

*Door* v. *Phœnix M. Life*, 67 Me. 438; *Phœnix M. Life* v. *Baker*, 85 Ill. 410; *Brooklyn Ins.* v. *Dutcher*, 95 U. S. 269; *Winchell* v. *Hancock M. Life* [U. S. Cir. Ct.], 8 Ins. L. J. 651.)

*Henry W. Johnson* for respondent. The policy with the conditions and agreement thereon indorsed were delivered together, and constitute but a single instrument, and the whole must be construed together. (*Worsley* v. *Wood*, 6 T. R. 710; *Mut. B. L. Ins. Co.* v. *Miller*, 2 Ins. L. J. 109; *Jennings* v. *Chenango Co. Mut. Ins. Co.*, 2 Den. 75; *Patch* v. *Phœnix M. L. Ins. Co.*, 44 Vt. 481; *Braunstein* v. *Accidental Death Ins. Co.*, 2 Bigelow, 610; Bliss on Life Insurance, § 58; *Evans* v. *U. S. Life Ins. Co.*, 3 Hun, 587; affirmed, 64 N.Y. 304; *Globe Mut. Life Ins. Co.* v. *Wolff*, 7 Ins. L. J. 44; *Rann* v. *Home Ins. Co.*, 59 N. Y. 388.)

Earl, J. On the first day of October, 1868, the defendant issued its policy of insurance commonly called an endowment policy, whereby for the consideration of $1,180.90, paid to it by the plaintiff, and of the annual premium of a like sum to be paid during the continuance of the policy, it insured the life of William M. Tweed, of the city of New York, in the sum of $10,000, for the benefit of the plaintiffs, share and share alike, payable three months after due notice and satisfactory proof of the death of Tweed during the continuance and before the termination of the policy, provided, however, that in case Tweed should be alive on the 3d day of April, 1878, and the policy should then be in force, the sum of $10,000 should be paid to him.

The policy contained numerous conditions, one of which declared that it should be " void, null and of no effect," if the party whose life was insured should, " without the written consent of this company, previously obtained, travel upon the seas except in voyages between coastwise ports of the United States"; and on the back of the policy there was also a stipulation or condition signed by the president and secretary of the company

in these words: " It being understood and agreed that if, after the receipt by this company of not less than three or more annual premiums, this policy should cease in consequence of the non-payment of premiums, then upon the surrender of the same, the company will issue a new policy for the full value acquired under the old one, subject to any notes that may have been received on account of premiums ; that is to say, if payments for three years have been made, it will issue a policy for three-tenths of the sum originally insured ; if for four years, for four-tenths ; and in the same proportion for any number of payments, without subjecting assured to any subsequent charge except the interest annually on all premium notes remaining unpaid on this policy."

Immediately after the policy was issued Tweed assigned to the plaintiffs all his interest therein. The premiums were duly paid on the policy in each year after its date down to and including the premium due on the first day of October, 1875, but not thereafter. On the 4th day of September, 1875, Tweed escaped from the custody of the sheriff of the city and county of New York, who then held him under civil process of arrest, and was recaptured at Vigo, in the kingdom of Spain, during the last week in September, 1876, when, as a prisoner, he was brought to this country in a vessel of war belonging to the navy of the United States, and restored to the custody of the sheriff. He had never obtained the consent of the company to travel upon the seas, and such travel was without its previous knowledge or subsequent assent.

The plaintiffs did not surrender, or offer to surrender the policy, until after the first day of August, 1877, when they offered to surrender the same, and demanded from the defendant a paid-up policy for eight-tenths of the amount of the policy, which demand was refused.

The plaintiffs thereafter, in November, 1877, commenced this action to enforce specific performance of the agreement to issue and deliver a paid-up policy of the same tenor and effect as the original policy for the sum of $8,000, or that they should have judgment decreeing that the original policy be rescinded

and that they recover of the defendant all moneys paid upon that policy as premiums together with interest. The defendant defended the action upon the sole ground that Tweed had violated the policy prior to October, 1876, by his travel upon the seas, and whether this was a good defense is the sole question for our present determination.

The interest of the plaintiffs in the policy, independent of such interest as they acquired by the assignment executed to them by Tweed, was contingent upon his death before the 3d day of April, 1878, as it was only upon such a contingency that the amount insured was, by the terms of the policy, payable to them. Tweed was admitted to be alive at the commencement of the action and there was no proof of the date of his death or that in fact, he has since died. The trial of the action was commenced on the 12th day of March, 1878, and the decision therein was rendered July 1, 1878, after the plaintiffs, by the terms of the policy, if Tweed were then alive, ceased to have any interest therein. In the absence of proof, he must be assumed to have been then alive, and hence all the interest the plaintiffs could then have in the policy was such as they acquired by virtue of his assignment to them. Hence, any defense the defendant could have made to an action brought by Tweed upon the policy, it would seem could be made against the plaintiffs.

That the policy was forfeited and all rights under it gone by the express terms thereof would seem to be too plain for much argument. But the plaintiffs seek to escape from the forfeiture upon various grounds, elaborately and earnestly insisted on, which we must briefly consider.

It is provided in the body of the policy that any violation of the conditions there named, among which is the one against travel upon the seas without consent, shall avoid the policy. They are all conditions subsequent and the violation of any one of them, *ipso facto,* avoided the policy without any notice from the company.

The forfeiture of the policy was expressly stipulated, and we know of no principle of equity which would authorize any

court to relieve against such a forfeiture.   There is certainly no
authority in this State justifying such relief.   Even if a court
of equity would, in any case, grant relief against such a for-
feiture, there are no circumstances here which, upon equitable
principles, would sanction such relief.   The forfeiture was not
incurred by accident, ignorance, mistake or any overpowering
necessity.   It was incurred in the efforts of the assured to es-
cape from the hands of the law.

It is not expressly provided in the policy that for the viola-
tion of the conditions here referred to the premiums paid should
also be forfeited, but such is the necessary result.   The prem-
iums were paid upon the contract between the parties, and the
plaintiffs had the benefit of the contract in the insurance upon
the life of Tweed during the eight years, and so long as the de-
fendant kept the contract on its part, they could not by them-
selves or Tweed violate the contract and thus terminate it, and
then recover back any portion of what they had paid thereon
toward its execution on their part.   To allow such a recovery
would be violative of principles applicable to all executory con-
tracts.   That premiums paid under such circumstances are for-
feited has always been held in this State and, it is believed,
everywhere.

It was also provided in the policy that if any of the state-
ments made in the application for the insurance were untrue, or
if any of the conditions printed on the back of the policy
should be violated, the policy should become void, and all the
premiums paid should be forfeited to the company.   As we
understand the argument of plaintiff's counsel, they claim be-
cause here the forfeiture of the premiums is expressly provided
for, while there is no such provision as to the violation of the
other conditions above named, it must be inferred that such a
forfeiture as to such other conditions was not intended.   Such
an inference is unwarranted.   An apparent purpose may be
discovered for the insertion of this express stipulation.   Some
of the conditions to which it has relation were conditions pre-
cedent, for the violation of which the policy would be inope-
rative from its date.   In such a case, when the company

assumed no responsibility and earned no part of the premiums paid, such a stipulation might be supposed to serve a purpose. The slender implication furnished by the insertion of this express stipulation is not sufficient to prevent the result to flow from the violation of the other conditions before mentioned in the policy which is usual, and, so far as has come to our observation, universal in all kinds of insurance.

It is also provided in the policy that the omission to pay the annual premium when due or the failure to pay at maturity any note (other than the annual premium note), given for premium, interest, or other obligation on the policy, should then and thereafter cause the policy to be void, " without notice to any party or parties interested therein." It is claimed on behalf of the plaintiffs that because it is here expressly provided that the policy should be void without notice, a forfeiture is not to follow the violation of other conditions contained in the policy in the absence of notice. The views above expressed are in part an answer to this claim. There is an apparent purpose for the insertion of this express stipulation. In making payments both parties must act, the one in receiving and the other in making the payments; and there are cases where one party is to make and the other to receive performance of a contract in which the latter must give some notice or make some demand in order to put the former in default; and this stipulation may have been inserted with the view to the rule in such cases. The object of a notice or demand in such cases is, to give the party, from whom performance of an obligation is required, an opportunity to perform. But as to the conditions subsequent contained in the body of this policy, a notice preceding forfeiture is wholly impracticable. What kind of a notice would be required, and what purpose could any notice serve, in case the assured should die by his own hand, or in consequence of a duel, or by the hand of justice, or in a drunken debauch, or if he should travel upon the seas without the previous knowledge of the insurer? The policy itself contains all the notice required, and for the

violation of these conditions it is sufficient for the insurer to make its defense when sued.

When the last premium was paid by the plaintiffs upon this policy Oct. 1, 1875, this receipt, signed by the president and secretary, was given:

"Policy No. 30,444, issued in favor of Josephine S. and Jennie S. Tweed, is hereby continued in force for twelve months from this date, to wit, until the first day of October, 1876, at noon, subject to and upon the express condition that if any note or other obligation given for any portion of the premium, due this day upon said policy, together with the interest on any loan, note or other obligation for premium thereon, shall not be paid on the day when the same shall become due and payable, then and from thenceforth said policy and this continuation thereof, shall immediately cease and become void, without notice to the insured or insurer, or any party or parties interested therein." The contention on the part of the plaintiffs is that this receipt kept the policy in force for one year, subject only to the conditions therein named. All of this receipt after the figures "1876" was in print and was undoubtedly the general form in use in the office of the defendant. There were doubtless cases to which the printed matter would be applicable, but it was not applicable to this case in which the premiums were all paid in cash, and it is clear that it was not inserted in this receipt for any purpose.

This receipt was intended as an acknowledgment that the premium for one year had been paid, and that so far as depended upon such payment the policy would be continued in force for one year. There is no reason to believe that it was intended that it should have any other or greater force. It cannot be supposed that the defendant meant to modify its policy or to annul the many important conditions therein contained so that the assured could commit suicide, or be hung for crime, or killed in war, or travel upon the seas, or engage in any of the extra-hazardous pursuits prohibited in the policy and yet a forfeiture not be produced.

On the back of the policy was printed the following.

"Written permits signed by the president or secretary of the company will be granted on reasonable terms for persons insured in this company to make voyages to any foreign country." The claim of the plaintiffs is that it was incumbent upon the defendant to grant a permit for travel upon the seas when demanded, upon the payment of a reasonable charge; that a forfeiture of the policy is not caused by a failure to obtain such a permit before the forbidden travel; but that the court at Special Term should have ascertained what a reasonable charge would have been, and allowed it to the defendant as a deduction from the amount otherwise due the plaintiffs. It is not provided that the permit will be granted upon the payment of a reasonable charge, but that it will be granted upon "reasonable terms." The defendant could not only make a reasonable charge for a permit, but could impose other terms, such as the time, mode and route of travel. If it unreasonably refused a permit, it is possible that a case might be made which would authorize a court of equity to compel the granting of one. But the terms upon which one is to be granted are so far in the discretion of the company that it would be a very rare and extraordinary case which would authorize any court to substitute its discretion for that of the company in regulating the terms of such a permit. But here the permit was not asked for; the voyage across the ocean was taken in violation of the condition in the policy, and the company was deprived of the opportunity to fix the terms upon which it would consent to the voyage. The assured chose his own time, route and mode of travel, and the policy became void by its express terms. There is nothing now for a court of equity to act upon; there are no terms to prescribe; and there is no power to relieve from the forfeiture, although the assured returned in safety to this country. (*Hathaway* v. *The State Mut. L. & Fire Ins. Co.*, 11 Cush. 448; *Nightingale* v. *The State Mut. L. Ins. Co. of Worcester*, 5 R. I. 38; *Rainsford* v. *The Royal Ins. Co., of Liverpool*, 33 N. Y. Sup. Ct. 454; affirmed 52 N. Y. 626; *Evans* v. *The U. S. L. Ins. Co.*, 64 id. 304.)

It is further contended on behalf of the plaintiffs that the

stipulation on the back of the policy, hereinbefore set out, providing for a paid-up policy, constituted a separate, independent or severable contract, and hence that the conditions contained in the body of the policy cannot be applied to it. There was but one contract between the parties, in which the defendant agreed, upon the payment of the premiums and performance of all the conditions by the plaintiffs and the assured, to pay the money as specified, and, in the event mentioned, to issue a paid-up policy. The whole contract is contained in the policy, and all that is printed or written on the face of it and on the back of it are parts of the policy and constitute the contract. (*Jennings* v. *The Chen. Co. M. Ins. Co.*, 2 Denio, 75 ; *Patch* v. *The Phœnix Mut. L. Ins. Co.*, 44 Vt. 481.) It is expressly mentioned in the body of the policy that the conditions printed on the back thereof are part thereof, and there are ten conditions, numbered consecutively, of which the one providing for a paid-up policy is the last one. That condition, by its terms, refers to what appears upon the face of the policy, and by its very language purports to be a part of the policy. That condtion was inserted in the policy to meet the case of those who, after the payment of three or more premiums, became unable or for some cause unwilling, to continue the payment of premiums, and for that reason permitted the policy to lapse. It was in one case only that a paid-up policy could be required, and that was in case the "policy should cease in consequence of the non-payment of premiums." The company did not agree to issue a paid-up policy if the policy ceased from any other cause. A party demanding such a policy must come to the company with a policy fully in force but for the non-payment of a premium. If it had been intended that a paid-up policy could be demanded whenever the policy, after the payment of three or more premiums, should cease from any cause, a matter of so much importance and so novel in insurance policies would have been plainly stated.

In reaching the conclusion that the policy was avoided by Tweed's travel upon the seas without the permit of the company, we have not been unmindful of the rule that contracts

are to be so construed, if by a proper interpretation of the language used they can be, as to avoid forfeitures. Here, considering all the language used, it is clear, we think, that it was intended that an absolute forfeiture should follow the breach of the condition against travel upon the seas.

It is a mistake to suppose that courts of equity will generally relieve against forfeitures. They will sometimes do so. Their jurisdiction to do so has been regarded as a dangerous one, not to be extended, and wise jurists have said that it should be sparingly exercised (Story's Eq. Jur., § 1301, et seq., and cases cited.) It has generally been found most conducive to the general welfare to leave parties to make their own contracts and then enforce them as made, unless on the grounds of fraud, accident, mistake, ignorance, impossibility or necessity, relief can be granted against them. When the damages caused by a breach of any condition can be easily and accurately ascertained and the award of damages will place the party entitled to claim a forfeiture in as good position as he was before the breach, courts of equity will sometimes relieve against the forfeiture. But in the case of insurance companies issuing thousands of policies containing carefully-framed conditions upon which many of their calculations are based, and upon which they rely for certainty, security and facility in the transaction of their business —business carried on in many States, at distant places, by means of numerous agents — it would lead to great embarrassments if such companies could be required to litigate with every policy holder who claimed to be relieved from a forfeiture, and to take such a measure of compensation as the courts should allow. By the exercise in such cases of the jurisdiction to relieve against forfeitures, courts might now and then give relief in cases of special hardship, but the general consequence of the exercise of the jurisdiction could not fail to be harmful.

We are therefore of opinion that the judgment should be affirmed with costs.

All concur.

Judgment affirmed.