The Northwestern Mutual Life Insurance Company v. Hazelett.

97 Ind. 570 (49 Am. R. 478), *Hines* v. *Driver*, 89 Ind. 339, and *Paul* v. *Davis*, 100 Ind. 422.

Petition for a rehearing overruled.

Filed March 27, 1886.

---

No. 11,396.

## The Northwestern Mutual Life Insurance Company v. Hazelett.

Pleading.— *Written Instrument.*—*Filing of Copy.*—Where the complaint alleges that a copy of the written instrument declared on is filed with and made a part thereof, and a copy follows in the transcript immediately after the complaint, this is sufficient to identify and show the filing of such copy.

Same.—*Application for Life Insurance.*—*Exhibit.*—In an action upon a life insurance policy, it is not necessary to file a copy of the application with the complaint.

Life Insurance.— *Policy. —Inconsistent Provisions.—Construction.*—Where a policy of insurance contains inconsistent and contradictory provisions, that provision most favorable to the assured will be adopted.

Same.— *Intemperance.— Forfeiture.—Cancellation.— General and Specific Provisions.*—*Inconsistent Stipulations.*—A specific stipulation in a separate clause of a policy of life insurance, that if the assured shall become intemperate to a certain degree the company may cancel the policy, and thus absolve itself from liability, will control a general stipulation that such a degree of intemperance shall work an absolute forfeiture.

Same.—*Suicide.— Unintentional Self-Destruction.*—A provision in a policy of life insurance, that, whether sane or insane, if the assured shall die by his own hand, the policy shall be void, has no application to a case where death results by accident, or without intention or expectation, although it be caused by the hand of the assured, *e. g.*, where death is produced by an overdraught of whiskey taken, without any intention of destroying his life, by one who had become physically and mentally weak by causes which he could not control.

Same.—*Answers to Questions in Application.— Warranty.—Burden of Proof.*—In an action on a policy of life insurance, the burden is upon the defendant to prove that answers by the assured to questions contained in the application are untrue.

The Northwestern Mutual Life Insurance Company *v.* Hazelett.

SUPREME COURT.—*Instructions.—Brief.—Practice.*—Where the legal proposition involved in an instruction is not stated in the brief of counsel, and nothing more is done than to indicate to the court the page of the record on which it may be found, with general observations concerning it, the objection to it will not be considered.

SAME.—*New Trial.—Evidence.—Bill of Exceptions.*—A motion for a new trial, based on alleged errors arising on the admission and exclusion of evidence, which refers to the evidence as set out in a bill of exceptions not yet filed, presents no question.

From the Putnam Circuit Court

*T. Hanna* and *S. A. Hays,* for appellant.

*M. A. Moore, G. C. Moore, D. E. Williamson* and *A. Daggy,* for appellee.

MITCHELL, J.—Sarah S. Hazelett brought suit against the Northwestern Mutual Life Insurance Company, to recover the amount of a policy of insurance issued upon the life of her husband.

The policy stipulates that upon due proof of the death of William J. Hazelett, the sum of three thousand dollars shall, within a time limited, be paid to his wife, Sarah S. Hazelett, as beneficiary. Issues were made upon a complaint filed in the court below, and upon trial by a jury, a verdict was returned upon which judgment was entered for three thousand three hundred dollars, the amount of the policy and accumulated interest. The first error assigned is that the court erred in overruling a demurrer to the complaint. The only defect suggested in regard to it is, that neither the original nor a copy of the policy sued on was filed with the complaint. Conceding that it contains an appropriate averment, that a copy of the policy is filed and made part thereof, and that a copy of a policy follows in the transcript immediately after the complaint, it is contended, nevertheless, that the transcript fails to show the actual filing of a copy.

The policy which is thus copied into the transcript conforms in all respects to that described in the complaint, and which it is averred therein " is filed herewith and made a

part of this complaint." Within repeated rulings, this is a sufficient identification of the instrument sued on, and shows that it was filed with the complaint. *Whitworth* v. *Malcomb*, 82 Ind. 454; *Lentz* v. *Martin*, 75 Ind. 228; *Carper* v. *Kitt*, 71 Ind. 24, and cases cited. The application was referred to in the complaint in like manner, and is likewise copied into the transcript. It was not necessary that a copy of the application should have been filed with the complaint. *Continental Life Ins. Co.* v. *Kessler*, 84 Ind. 310; *Penn Mut. Ins. Co.* v. *Wiler*, 100 Ind. 92 (50 Am. R. 769). A demurrer was sustained to the first paragraph of the defendant's answer. This ruling is assigned for error.

This answer sets up a defence, that the policy contained an express stipulation that if the assured should ever become intemperate, or so far intemperate as to impair health or induce delirium tremens, the policy should become null and void. It avers that, after the policy was delivered, the assured did become intemperate to such a degree as to induce delirium tremens.

The second clause of the printed conditions upon which the policy was accepted, as therein recited, contains among many other prohibitions in respect to the conduct and occupation of the assured, a prohibition against intemperance, the substance of which is stated in the answer as summarized above. This clause provides that the doing of any or all of the things prohibited therein shall render the policy null and void.

The fifth clause of the printed conditions of the policy is as follows: "5th. If the said insured becomes habitually intemperate, or so far intemperate as either to impair health or induce delirium tremens, then, in either such case, the company may cancel this policy, and thereupon be absolved from all liability upon the same except only the 'surrender value' thereof, computed according to the practice of the company, which surrender value it will pay on the surrender of this

policy if applied for in the lifetime of the insured and within one year from the cancellation of the policy."

In the clause first alluded to, intemperance to the degree of impairment of health, or of inducing delirium tremens, worked an absolute forfeiture. In the other, the result which was to flow from the same conduct was, that the insurance company might cancel the policy, and by that means absolve itself from liability, except for the "surrender value."

The first stipulation is found in a printed clause in which is contained numerous other conditions, the violation of any one of which was to render the policy void. The last is a separate clause of the contract and is complete in itself.

It thus appears that two stipulations were incorporated in the policy, covering the same subject-matter. The one providing that upon certain conditions the policy should become absolutely void; the other, that upon precisely the same conditions, the insurance company might avoid the policy and absolve itself from liability to a certain extent. Since both of these conditions can not stand together, the inquiry is, which shall prevail?

While forfeitures are never favored, yet, if, upon a reasonable construction, it appears that the parties contracted for a forfeiture upon certain conditions, it only remains for the courts to enforce the contract as the parties have made it. It is neither unlawful nor against public policy for a contract of life insurance to stipulate that upon certain conditions or contingencies the policy should become void. *Bloom* v. *Franklin Life Ins. Co.*, 97 Ind. 478 (49 Am. R. 469); *Douglas* v. *Knickerbocker Life Ins. Co.*, 83 N. Y. 492.

A forfeiture will not be enforced unless it is clearly demanded by established rules governing the construction of written agreements. When a policy of insurance contains inconsistent or contradictory provisions, it is the rule that the provision most favorable to the assured will be adopted. *Moulor* v. *American Life Ins. Co.*, 111 U. S. 335; *National Bank* v. *Ins. Co.*, 95 U. S. 673.

Courts will construe a contract of insurance liberally, so as to give it effect rather than to make it void. Conditions, which create forfeitures will be construed most strongly against the insurer. Only a stern legal necessity will induce such a construction as will nullify the policy. *Carson* v. *Jersey City Ins. Co.*, 14 Vroom, 300 (39 Am. R. 584); *Franklin Life Ins. Co.* v. *Wallace*, 93 Ind. 7; Bliss Life Ins., section 385.

In *Burkhard* v. *Travellers' Ins. Co.*, 102 Pa. St. 262 (48 Am. R. 205), it was said: " When a party uses an expression of his liability having two meanings, one broader and the other more narrow, and each equally probable, he can not, after an acceptance by the other contracting party, set up the narrow construction."

The policy before us having been presumably prepared by the company, and containing on its face inconsistent or ambiguous stipulations as to the consequences which should result from intemperance, the meaning most favorable to the assured must be attributed to it. This rule is particularly applicable in a case like this, where a forfeiture is insisted upon. To hold otherwise would be to give a construction to the contract which would enable the insurance company to exercise its option, after having collected premiums, to insist upon a forfeiture or not according to its pleasure.

The consequence of intemperance was made the subject of a particular specific and separate stipulation in which no other subject is mentioned, and, according to well established rules of construction, when such is the case, the separate specific stipulation is to be preferred over a general stipulation inconsistent therewith.

As there was no averment in the answer that the insurance company had absolved itself from liability by cancelling the policy, according to the terms of the fifth stipulation contained therein, the demurrer to the first paragraph of the answer was correctly sustained.

The demurrer was substantially in the form of that considered in the cases of *Rennick* v. *Chandler*, 59 Ind. 354, and

*Stone* v. *State, ex rel.*, 75 Ind. 235, and is subject to the same criticisms as were there made. It sufficiently appears, however, that it was adressed to each paragraph of the answer separately. *Mitchell* v. *Stinson*, 80 Ind. 324. It is, therefore, not a joint demurrer, as contended, to all of the several paragraphs of answer.

It is assigned for error that the court erred in overruling the demurrer to the second and third paragraphs of reply. Both of these replies are directed to the fourth, fifth, sixth and seventh paragraphs of answer.

Each of these paragraphs of answer refers to a stipulation which is found in the policy, to the effect that, whether sane or insane, if the assured shall die by his own hand, the policy shall be void.

The fourth paragraph of answer, which fairly represents all the others, charges, in substance, that after the delivery of the policy, the assured voluntarily entered upon a course of dissipation, by an excessive use of spirituous and malt liquors as a. beverage, whereby his mental and physical powers were enfeebled, and he was rendered less able to understand the nature and probable results of his own acts, and that while in such enfeebled condition, and without fully knowing the consequences of his acts, he procured and swallowed an excessive draught of alcoholic liquor, from the effect of which he died shortly thereafter.

The replies set up substantially, that the assured, prior to his death, from causes over which he had no control, became physically and mentally weak and diseased, and that he resorted to the use of spirituous liquors as a means of restoring his health; that during his physical and mental debility he accidentally, without any intention of destroying his life, took an overdose of whiskey, from the effect of which he became sick and died; that the results which followed the use of the whiskey were not expected nor intended by the assured; that, by reason of his weak and debilitated condition, the whiskey had an unusual, accidental and unexpected effect

upon the assured, causing him to sicken and die, when no such result was expected or intended.

On behalf of the appellant, it is contended that because it is not denied that the assured voluntarily entered upon a course of dissipation, as charged in the answer, and because it is not denied that his weak and enfeebled condition was the result of such dissipation, the replies do not avoid the answer, notwithstanding the averments therein contained that the effect produced by the draught of whiskey was unexpected, unintentional and accidental. It should be stated, that it is averred in the second paragraph of the reply, that the assured did not use intoxicating liquors so as to impair his strength or destroy his health.

In the third paragraph, the averment is, that he became physically and mentally diseased and weak from causes over which he had no control.

Stipulations of the character here under consideration have been the subject of much discussion and of frequent judicial construction. It seems to be settled that such a clause in a policy of life insurance is a protection to the insurer, in case of voluntary and intentional self-destruction by the assured, whether sane or insane. *Bigelow* v. *Berkshire Life Ins. Co.*, 93 U. S. 284; *De Gogorza* v. *Knickerbocker Life Ins. Co.*, 65 N. Y. 232; *Pierce* v. *Travelers' Life Ins. Co.*, 34 Wis. 389.

Such a clause has, however, no application to a case in which death resulted by accident or without intention or expectation, even though it was caused by the hand of the assured. Death resulting from accident, or from an act which at the time it was entered upon or engaged in was not expected or intended to produce that result, can not be said to be within the meaning of the policy. *Penfold* v. *Universal Life Ins. Co.*, 85 N. Y. 317 (39 Am. R. 660); *Pierce* v. *Travelers' Life Ins. Co.*, *supra; Burkhard* v. *Travellers' Ins. Co.*, *supra.*

The pleadings under consideration involve no question of insanity. It is not averred that the assured was insane.

From causes over which he had no control, a state of mental and physical weakness resulted, and while in that state he took an overdraught of whiskey, without any expectation or intention of destroying his life. Death was, therefore, the result of an accident, and the policy is not avoided. The demurrer to the replies was properly overruled.

It is next contended that the court erred in overruling the appellant's motion for a new trial, and under this assignment it is insisted that the verdict is not sustained by sufficient evidence.

Without entering upon a discussion of the evidence, we think it does not establish the fact that William J. Hazelett intentionally destroyed his own life ; nor does it so clearly sustain any of the defences on which the appellant relied as that it can be said the finding of the jury is not well supported by the evidence.

The giving, and refusing to give, certain instructions, were assigned as grounds for a new trial.

The objections which are stated as pertaining to the instructions are, in the main, of such a general character that we are led to conclude that no specific error was apparent to the appellant's learned counsel. Some of those upon which error is predicated were not assigned as grounds for a new trial in the motion filed for that purpose, and are for that reason not before us.

Where the legal proposition involved in an instruction is not in some way stated in the brief of counsel, and nothing more is done than to indicate to the court the page of a voluminous record on which it may be found, with some general observations concerning it, the objections to it will not be considered. *LaRose* v. *Logansport Nat'l Bank,* 102 Ind. 332.

Such of the instructions as relate to the clause in the policy which provides, that if the assured, whether sane or insane, shall die by his own hand, have been sufficiently considered in what has been already said on that subject in respect of the pleadings. The law of the case in that regard was cor-

rectly interpreted to the jury in conformity to what has been expressed heretofore in this opinion.

Some of the instructions prayed for by the appellant proposed, as the law applicable to one feature of the case, that if the act which actually resulted in the death of the assured was voluntarily performed, and the probable result of the act was such that, owing to his enfeebled condition, death was likely to ensue, then the policy was avoided. We can not assent that this is a correct statement of the law as applied to the policy under consideration. As already stated, the clause alluded to does not exonerate the insurance company from liability, unless the act which caused the death of the assured when performed was intended to have that effect. If it were otherwise, it might happen that any one, in the delirium of sickness, who should do an act with the intent, so far as he had any intent, to restore himself to health, and which, under other circumstances, he might know was highly dangerous, would, nevertheless, if death should unexpectedly ensue, fall under the condemnation of having committed suicide, or died by his own hand. Thousands of persons have doubtless prematurely come to their death by taking a potion which aggravated, when the hope or purpose was that it might allay, a malady which distracted them. Possibly a physician could have told them, or in the absence of the malady they might have known themselves, that it was highly dangerous to take it when in an enfeebled condition. The instructions prayed for on this subject were properly refused.

Other instructions presented by the appellant requested the court to tell the jury that certain answers to questions contained in the application for insurance constituted warranties, and that the burden of proving the truth of such answers was on the plaintiff.

In the case of *John Hancock Mut. Life Ins. Co.* v. *Daly*, 65 Ind. 6, this point was considered, and it was there held, in accord with the general rule, that the burden was, under like circumstances, upon the defendant. *Insurance Co.* v. *Gridley*,

100 U. S. 614; *Piedmont, etc., L. Ins. Co.* v. *Ewing*, 92 U. S. 377; *Swick* v. *Home. Life Ins. Co.*, 2 Dillon, 160.

As causes for a new trial, it is assigned that the court erred in admitting and excluding certain evidence admitted and excluded.

None of the evidence thus admitted or excluded is identified in the motion for a new trial with sufficient certainty to present any question.

The motion for a new trial concludes with a statement that all the evidence improperly admitted or excluded is more particularly set out in a bill of exceptions containing the evidence.

The motion for a new trial was filed and overruled on the 5th day of October, 1883, and the bill of exceptions containing the evidence was not signed by the judge until November 3d, 1883. There was, therefore, no bill of exceptions such as that referred to in the motion on file at the time the motion for a new trial was overruled. *Harvey* v. *Huston*, 94 Ind. 527; *State, ex rel.*, v. *Riggs*, 92 Ind. 336; *Miller* v. *Shriner*, 87 Ind. 141; *Burns* v. *Thompson*, 91 Ind. 146; *Bradway* v. *Waddell*, 95 Ind. 170.

Having thus considered all questions which the record presents, and finding no error, the judgment is affirmed, with costs.

Filed Jan. 27, 1886.