A. W. GREER, Administrator of the Estate of MABEL S. ATKINS, Deceased, Respondent, v. SUPREME TRIBE OF BEN HUR, a Corporation, Appellant.

Springfield Court of Appeals, January 8, 1917.

1. **INSURANCE: Fraternal Beneficial Association: Ambiguous or Conflicting Terms of Policy: Construction.** Where the provisions of a policy of a fraternal beneficial association are conflicting or ambiguous they should be construed most favorably to uphold the contract and against a fortfeiture.

2. **———: ———: Forfeiture: When Enforced.** While forfeitures in fraternal beneficial policies are never favored, yet if upon a reasonable construction of the policy it appears that the parties thereto contracted for a forfeiture upon certain conditions, the court will enforce the contract as the parties have made it.

3. **———: ———: Forfeiture by Act of Beneficiary: Meaning of Term, Beneficiary.** In an insurance policy containing provisions forfeiting the same absolutely in case the death of the insured is caused by the beneficiary, the term beneficiary means the person who is designated such directly or indirectly by the policy and is not limited to such persons who survive the insured.

4. **———: ———: Provisions of By-Laws: When Not Conflicting.** Provisions in the by-laws of benefit societies providing for absolute forfeiture, in case the death of the member is caused by the beneficiary, are not in conflict with another provision of the by-laws dealing with policies which survive the members' death and providing who shall receive the benefits in case of the prior death of the named beneficiary.

5. **———: ———: By-Laws: Member Murdered By Beneficiary.** The by-laws of defendant fraternal beneficial association provided that if the death of the member was cause or procured by his beneficiary the amount payable under the certificate should be forfeited to the society and not paid to the beneficiary or his heirs, assigns or personal representatives, or to the heirs, assigns or personal representatives of such member and the by-laws further provided that no benefit should be paid on the death of a member killed by any of the beneficiaries, such provisions apply where the beneficiary named murders the members, though such beneficiary committed suicide and died before the member, regardless of a provision in the by-laws that if the designated beneficiary dies before the member and the member makes no disposition of the certificate it shall be paid to the member's representatives for the benefit of the member's heirs.

Appeal from Butler County Circuit Court.—*Hon J. P.  
Foard,* Judge.

.REVERSED.

*Sheppard & Sheppard, C. E. Pope* and *H. F. Drie-meyer* for appellant.

*L. M. Henson* for respondent.

STURGIS, J.—This case was tried on an agreed statement of facts, so that whatever is here stated as to the facts should be understood as being undisputed. We also desire to commend the attorneys for thus eliminating useless controversy over unimportant matters and conceding the facts which both parties knew to be true and thereby presenting the real issue in a concise and clear cut manner.

The defendant is a fraternal beneficial association on the lodge system with ritualistic work. Its home office is in Indiana, and it complied with the laws of this State authorizing it to do business here. This suit is on one of its policies of insurance, or more properly benefit certificates, duly and regularly issued on the life of Mabel S. Atkins by her maiden name, she then being unmarried, Mabel S. Hall, who continued to be, until her death, a member in good standing of a local lodge of this order in Butler County. The policy or certificate was issued March 31, 1911, and named certain relatives of the insured as beneficiaries. After her marriage to William Atkins, the insured, on February 25, 1913, properly designated him as the beneficiary as the policy and laws of the order permitted her to do. After the death of Mabel S. Atkins in good standing and all dues fully paid on April 23, 1915, due and proper proof of her death was made and accepted by defendant. Her said husband and beneficiary being then also dead, under circumstances we shall presently state, the plaintiff was duly appointed administrator of the insured's estate. This administrator is suing for the benefit of

the heirs of the insured, her brothers and a niece, and defendant concedes that if it is liable plaintiff shall recover. The case was submitted to the court as a jury on the agreed facts and judgment was rendered for plaintiff for $1000, the amount of the policy.

The only defense which is made grows out of the provisions of the by-laws of this defendant order which are made part of the policy contract, and the fact that the death of the insured was caused by the named beneficiary in the policy. The agreed facts are that on the 23rd day of April, 1915, William Atkins, the husband of the said Mabel S. Atkins, and who had heretofore been designated as the beneficiary in said beneficial certificate, assaulted his said wife, Mabel S. Atkins, and inflicted injuries upon her, as a result of which she died; that immediately after committing the assault upon his said wife, the said William Atkins cut his throat with a razor or other sharp instrument and that as a result thereof he died twenty minutes before the time of the death of his said wife, Mabel S. Atkins; that no beneficiary other than the said William S. Atkins was named by the said Mabel S. Atkins prior to her death, and that at the time of her death she left surviving her certain named brothers and a niece being the daughter of a deceased sister, said brothers and niece being her only heirs at law.

The provisions of the policy and by-laws forming part thereof which defendant claims bar any recovery on this policy are as follows: "When Interest is Forfeited. Section 111. Should a member die by reason of, or as a result of, his unlawful act, his certificate or beneficial membership is not only void as set forth in these laws, but the benefits thereto are forfeited to the Supreme Tribe of Ben Hur. If the death of a beneficial member be *caused or procured by his beneficiary or* beneficiaries, or any of them, then, and in that event, the amount payable under the terms of his beneficial certificate *shall be forfeited to the society,* and shall become a part of the benefit fund in the class in which he holds his membership in the society, for the use of its

surviving members, and *shall not be paid to the bene-ficiary* or beneficiaries, or his or their heirs, assigns or personal representatives, *or to the heirs, assigns, or personal representatives of such beneficial member."* (Italics our.) "Membership—When Void. Section 101. No benefit shall be paid on account of the death of a member, which death occurred . . . (5) or on account of, or inconsequence of, or as a result of, the violation of any ordinance of any city or town, or of any law, either civil or criminal, of any State, territory, province or country in which such member may be, which voilation of ordinance or law is the proximate cause of such death or disability, or if the death or disability follows such violation of any ordinance or law, and would not have occurred except for the violation of such ordinance or law, or if *killed by any of the beneficiaries;* (6) or if he shall die by his own hand, whether sane or insane, whether voluntarily or involuntarily, at the time, except when the insanity of such member shall, prior thereto, have been judicially determined by the proper court."

The plaintiff, as justifying a recovery, invokes the following provision of the by-laws: *"Death or Divorce of Beneficiaries.* Section 121. In the event of the death of a designated beneficiary, prior to the death of the member, and the member dies without having made disposition of said portion or all of his certificate, the same shall be paid to the legal representative of said deceased member for the use and benefit of the deceased member's heirs, if any survive. In the event of the death of all the beneficiaries named in the certificate, and no person or persons shall be found entitled to receive the same by the laws, rules and regulations of the Order, then the benefit payable under said certificate shall revert to the benefit fund of the Supreme Tribe, in the class to which the member belonged. If the beneficiary or beneficiaries designated in any certificate shall not be entitled to receive the same, the benefit shall revert in case of death to the benefit fund for the benefit and use of all the surviving members of the class in which the

deceased member belonged. · In the event of the divorce of a beneficial member" etc. (Italics ours.)

The plaintiff contends that the above policy provisions are somewhat conflicting or at least ambiguous and should be construed most favorably to uphold the contract and against a forfeiture. [1 Beacon Benefit Societies, sections 178 and 179, R. C. L., p. 926.] The contention is that William Atkins, who is named beneficiary in the policy and who killed his wife, the insured or beneficial member, never in fact became the beneficiary under the policy since he died first by twenty minutes; that he was only a contingent beneficiary when he inflicted the mortal blow; that when the insured died, the named beneficiary being also dead, her heirs, the real plaintiffs here, became, under the policy contract, the beneficiaries and that they did not cause her death. As a corollary to this plaintiff says that the by-laws, section 111, supra, providing for the forfeiture of the policy in case the insured's death is caused by the beneficiary, applies only when the designated beneficiary survives the insured member and thereby becomes a beneficiary in fact. This is certainly a very sharp and technical construction of this by-law and, if followed to its necessary conclusion, a beneficial member can never be killed by one who is more than a *contingent* beneficiary when the mortal blow is inflicted; for, perchance, lightning or some such quick agency might end the life of the slayer before that of his victim. Using the illustration suggested by plaintiff that a boy is never his father's heir until after the father's death, so the beneficiary, as or being such, never kills the member because he is not a beneficiary until after the killing is over. This reminds us of the reasoning adopted by the builder of the "One Hoss Shay," q. v.

It seems to us, however, that there is no conflict in the provisions above mentioned, as they were written for different purposes and accomplish different objects. The provisions of section 121, as the title indicates, relate to live policies—policies which are valid obligations after the insured's death and are matured by such death

—and provide who shall be entitled to the benefits of such policy in case of the prior death or divorce of the named beneficiary. The provisions of section 111, supra, (and also section 101) of the by-laws, as the title indicates, relate to a totally different subject, to-wit: The forfeiture of policies and the acts and conditions which make same void and have to do with dead policies incapable of enforcement by anyone. There are a number of acts there specified as forfeiting the policy and making it void (in addition to the common one of nonpayment of dues and assessments), such as suicide, sane or insane; death caused by violation of law; death from participating in a mob or riot; intemperate use of intoxicants, morphine, etc. Among those acts rendering the policy void and discharging the defendant from any liability to anyone by reason thereof is that of the death of the insured caused by the beneficiary. The by-law in the most positive terms provides that if the death is caused or produced by the beneficiary the amount otherwise payable shall be forfeited to the society and becomes a part of its funds for the use of the other members; and to avoid any possible misunderstanding further specify that such amount shall not be paid to the beneficiary or his heirs, *or to the heirs, assigns or personal representative of such beneficial member,* the very persons who are now claiming.

Suppose the beneficial member and her guilty husband in the present case had left children. Then they, under the provision invoked by plaintiff if it alone is to prevail, being the insured's heirs, would be entitled to the insurance, though they are also the heirs of the offending beneficiary and would profit by his wrong. This would clearly subvert the purpose of the policy provision, "to remove the temptation of anxious expectants to bring about premature death of the insured," for it is well known that a person will do for the benefit of his children even more than for himself.

We are not particularly concerned with the wisdom of this policy provision and to our minds its purpose might as well or better be accomplished by prohibiting

the offending beneficiary, and perhaps those claiming under him, from profiting by his wrong; but that is no reason why the contract should not be enforced as written unless such provision is against public policy. We might also think, as have many other courts, that a similar provision against suicide is best subserved by limiting it to conscious and intention suicide and excluding suicide by one insane. [Mutual Life Ins. Co. v. Terry, 15 Wal. 580, 21 L. Ed. 236. 2 Beacon Benefit Societies, sec. 334; Penfold v. Universal Life Ins. Co., 85 N. Y. 317, 39 Am. Rep. 660.] But when the policy plainly says that suicide, sane or insane, renders the policy void the courts will enforce it. [2 Beacon Benefit Societies, sec. 336.] The Supreme Court of Indiana, speaking of the same question, said: "While forfeitures are never favored, yet, if upon a reasonable construction it appears that the parties contracted for a forfeiture upon certain conditions, it only remains for the courts to enforce the contract as the parties have made it. It is neither unlawful nor against public policy for a contract of life insurance to stipulate that upon certain conditions or contingencies the policy should become void." [Northwestern Life Ins. Co. v. Hazelett, 105 Ind. 212, 215, 4 N. E. 582, 55 Am. Rep. 192; Douglas v. Life Ins. Co., 83 N. Y. 492; 14 R. C. L., pp. 928-931.]

There can be no doubt, we think, that when a policy contains a provision designed to remove a temptation of the beneficiary to prematurely end the insured's life it means the beneficiary who is, on the face of the policy, named or made such directly or indirectly. The case of Grand Circle Women of Woodcraft v. Rausch (Colo.), 134 Pac. 141, is the only case similar to this one which we are able to find and it fully sustains our position that this policy, under the facts, became forfeited and void. The policy or benefit certificate sued on in that case is similar to this one and contains this provision: "If the member to whom this certificate shall be issued shall be murdered by any beneficiary named herein, or should any beneficiary named in this certificate cause the death of such member directly or indirectly, intentionally or

unintentionally, then any benefits which such beneficiary might otherwise have received shall revert to the Grand Circle." The facts there were that the named beneficiary, while insane, killed his wife, the insured, and then committed suicide. It was not absolutely shown which died first and the court did not think that an essential point, though the court said of the evidence that "It seems hardly possible that the beneficiary could have so crushed the skull of the insured that her brains should have protruded without causing instant death, or death before the beneficiary could have taken poison and suffered the death that his condition would seem to indicate." It will be noted that the provision of the by-laws, sustained as a defense in that case, is not as strong as the one here, since it does not contain the express provision prohibiting payment to the heirs of the insured in case death is caused by the beneficiary, though the court arrived at this conclusion from the words making the benefits revert to the insurer. The judgment appealed from in that case was for plaintiff and the Colorado Court of Appeals, in reversing the case, said: "Feeling that we must uphold the conditions in the certificate or policy or make a new contract for the parties, and believing that it does not contravene any principle of sound public policy, the judgment should be and is hereby reversed, with an instruction to the trial court to dismiss the same, with costs."

The dissenting opinion in that case is based only on the proposition that because of the use of the word "murder" and other expressions indicating that the policy was only aimed at the *wrongful* taking of the life of the insured by the beneficiary it would not apply to an insane beneficiary, incapable of committing a wrongful act. The policy provisions here, however, are different in this respect and there is no such claim of insanity.

The result is that the judgment is reversed. *Farrington, J.,* concurs; *Robertson, P. J.,* not sitting.