SOVEREIGN CAMP WOODMEN OF THE WORLD *v.* CLARK.

Opinion delivered December 21, 1931.

*D. E. Bradshaw, O. C. Burnside* and *W. G. Streett,* for appellant.

*J. R. Parker,* for appellee.

MEHAFFY, J. In February, 1926, the appellant, the Sovereign Camp of the Woodmen of the World, issued to Robert E. Ferris a certificate and policy of insurance for the sum of $2,000 and $100 for monument. Fannie E.

Ferris, the wife of said Robert E. Ferris, was the sole beneficiary.

On October 14, 1930, Fannie E. Ferris, the beneficiary, shot and killed the insured, Robert E. Ferris, and, in a few minutes thereafter, committed suicide.

D. S. Clark was appointed administrator of the estate of Robert E. Ferris, deceased, and began this action to recover $2,100 with 12 per cent. damages and attorney's fees. The appellant had denied liability.

The case was tried before the circuit judge sitting as a jury on an agreed statement of facts, which is as follows:

"First. That, on October 14, 1930, Fannie E. Ferris, wife of Robert E. Ferris, and sole beneficiary named in the certificate or policy of insurance sued on herein, intentionally killed the said Robert E. Ferris by shooting him, the said Robert E. Ferris, in the back, while the said Robert E. Ferris was talking over the telephone, and very shortly thereafter committed suicide by shooting herself with the same gun as she used in the murder of her said husband.

"Second. That, at the time the said Robert E. Ferris was murdered, as aforesaid, by the said Fannie E. Ferris, he, the said Robert E. Ferris, was a member of, and in gooding standing in, the defendant society.

"Third. That, shortly after the death of the said Robert E. Ferris, as aforesaid, J. R. Parker, the attorney for plaintiff, wrote the defendant, advising it of the murder of said Robert E. Ferris by the said Fannie E. Ferris, whereupon said defendant denied in writing all liability under the policy or certificate sued on herein, and refused to erect the monument as called for by the monument rider, and thereby waived the furnishing of proof of death of the said Robert E. Ferris.

"Fourth. That D. S. Clark is and was at the time of the bringing of this suit the duly appointed, qualified and acting administrator of the estate of Robert E. Ferris, deceased.

"Fifth. That the defendant is what is known as **a** fraternal benefit association, has a lodge system, a ritualistic form of work, and a representative form of government, and has no capital stock and transacts its business without profit and for the sole benefit of its members and their beneficiaries.

"Sixth. That a photostatic copy of the original application, signed by the said Robert E. Ferris, upon which the policy or certificate sued on herein was issued, may be used in evidence in lieu of the original of said certificate.

"Seventh. That, at the time said application was made by the said Robert E. Ferris for membership in defendant society, and at the time the policy or certificate sued on herein was issued and delivered, the constitution, laws and bylaws of the defendant, among other things, provided:

" 'The following conditions shall apply to every beneficiary certificate, and shall be binding on both the member and the beneficiary; * * * If the member holding this certificate * * * should die in consequence of a duel; or from the direct result of the drinking of intoxicating liquors; or while engaged in war, except in defense of the United States of America; or by his own hand or act, whether sane or insane, or by the hands of the beneficiary or beneficiaries, whether sane or insane, except by accident on the part of the beneficiary, * * * the certificate shall be null and void and of no effect, and all moneys which shall have been paid and all rights and benefits which have accrued on account of the certificate shall be absolutely forfeited without notice or service.'

"Eighth. That the statutes of Nebraska, under which defendant is incorporated, provides:

" 'That payment of death benefits shall only be made to the wife, husband, families, heirs, blood relations, affianced husband, affianced wife, father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, sister-in-law, step-father, step-mother, step-children, step-brother, step-sister, children by legal adoption or a per-

son or persons dependent upon the member, or under certain circumstances to an incorporated charitable institution or a person entering into a contract to support the member.' [See Comp. St. Neb. 1929, § 44-1207].

"Ninth. That the heirs of Robert E. Ferris, deceased, consist of his several brothers and sisters."

The appellant is a fraternal benefit society as described by § 6068 of Crawford & Moses' Digest. Section 6076 of Crawford & Moses' Digest provides, among other things: "The certificate, the charter, or articles of incorporation, or, if a voluntary association, the articles of association, the constitution and laws of the society and the application for membership and medical examination signed by the applicant and all amendments to each thereof, shall constitute the agreement between the society and member. * * * And any changes, additions or amendments to said charter or articles of incorporation or articles of association, if a voluntary association, constitution and laws, duly made or enacted subsequent to the issuance of the benefit certificate, shall bind the member and his beneficiaries, and shall govern and control the agreement in all respects the same as though such changes, additions, or amendments had been made prior to and were in force at the time of the application for membership."

One of the provisions in the contract is that, if the insured shall die by the hands of the beneficiary, whether sane or insane, except by accident on the part of the beneficiary, the certificate shall be null and void. The only question for our consideration in this case is whether that provision in the contract making the policy void if the insured is killed by the beneficiary is valid.

The appellee earnestly argues that the provision is immoral, base, revolting, and non-enforceable, and that it is contrary to public policy. He calls attention to numerous authorities to the effect that contracts against public policy are not enforceable. In this he is correct, but the question whether a contract is against public policy must be determined by its purpose and tendency. No one can lawfully do that which has a tendency to be injurious to

the public welfare. There is no contention that the provision in the contract here involved is injurious to the public welfare or that it violates any statute.

If the beneficiary in a policy had killed the insured, he could not recover. It would be against public policy for him to recover. No one can recover on a contract that is either against public policy or that is illegal, but the fact that the beneficiary who murders the insured cannot recover does not mean that the benefit society would not have the right to make a contract which would make the policy void if the beneficiary killed the insured.

The statute in Arkansas expressly authorizes fraternal benefit societies like the appellant to make contracts with their members. The appellant has no capital stock, transacts its business without profit for the sole benefit of its members. Therefore, if a policy is void, this is a benefit, not to the organization, but to all of the members, and we know of no law that prohibits fraternal benefit societies from making contracts of this kind.

The society is expressly authorized by statutes, not only to make contracts with its members, but it is authorized from time to time to change its constitution and bylaws, and the statute provides that the constitution and bylaws so changed shall be as binding on the member as if they had been in force at the time the contract was made.

This court said: "The wilful, unlawful, and felonious killing of the assured by the person named as beneficiary in a life policy forfeits all rights of such person therein. It is unnecessary that there should be an express exception in the contract of insurance forbidding a recovery in favor of such person in such event. On considerations of public policy, the death of the insured, wilfully and intentionally caused by the beneficiary of the policy, is an excepted risk so far as the person thus causing the death is concerned." *Metropolitan Life Ins. Co.* v. *Shane,* 98 Ark. 132, 135 S. W. 836.

The doctrine announced in the above case has been uniformly followed by this court since that time.

It is therefore the settled doctrine in this State that a beneficiary who murders the assured cannot recover. If that was all the provision there was in the benefit certificate, it would not avoid the policy, but recovery could be had by the estate of the assured. But this policy provides that, if the beneficiary kills the assured, the policy shall be void, and no recovery can be had. It is conceded that no recovery can be had unless this provision of the contract is contrary to public policy.

The Colorado court quoted with approval the following from the Supreme Court of Indiana: "While forfeitures are never favored, yet, if, upon a reasonable construction, it appears that the parties contracted for a forfeiture upon certain conditions, it only remains for the courts to enforce the contract as the parties have made it. It is neither unlawful nor against public policy for a contract of life insurance to stipulate that upon certain conditions or contingencies the policy should become void." *Grand Circle Women of Woodcraft* v. *Rausch,* 24 Cal. App. 304, 134 Pac. 141.

This court said: "The application for membership in appellant order and the certificate issued thereon both expressly refer to the laws, rules, and regulations of appellant, and make the certificate null and void, if the holder thereof fails to comply with such laws, rules, and regulations.

"It is well settled by our own cases, as well as the authorities generally, that the constitution and laws of a mutual benefit fraternal society, such as that of appellant form the basis and constitute a part of the contract of insurance. This contract measures the obligations of the members and the liability of the association or governing body." *Sovereign Camp of W. of W.* v. *Newsom,* 142 Ark. 132, 219 S. W. 759; *Sovereign Camp of W. of W.* v. *Barnes,* 154 Ark. 486, 243 S. W. 55; *Greer* v. *Supreme Tribe of Ben Hur,* 195 Mo. App. 336, 190 S. W. 72; *Griffith* v. *Mutual Protective League,* 200 Mo. App. 87, 205 S. W. 286; *Markland* v. *Modern Woodmen of America,*

(Mo. App.) 210 S. W. 920; *McDade* v. *Mystic Workers of the World,* 196 Iowa 857, 195 N. W. 603.

The last three or four cases cited above hold not only that both parties are bound by the contract they make, but that a contract like the one here involved is not a violation of the statute, and is not against public policy.

The law-making power could prohibit the making of contracts like the one here involved and could provide that, in a case like the one at bar, there might be a recovery by the estate of the assured, but that is a question for the Legislature and not the courts. The provision of the contract here involved does not violate any statute, and is not contrary to public policy.

The judgment is therefore reversed, and the cause dismissed.