[No. 10,761.—In Bank.]
November 17, 1882.

## THE PEOPLE *v.* T. J. HOIN.

HOMICIDE—INSANITY—DEFINITION.—On the trial the Court instructed the jury: "Insanity, as used in this sense, means such a diseased and deranged condition of the mental faculties as to render the person incapable of distinguishing between right and wrong in relation to the act with which he is charged." *Held,* The instruction is correct.

„—ID.—ID.—IRRESISTIBLE IMPULSE.—The Court refused to instruct the jury, on motion of defendant, as follows: "The mere intellectual knowledge of right and wrong is not enough to defeat a defense of insanity, unless with such knowledge the defendant also has the volitional power to choose the one instead of the other. No thoroughness of knowledge by the defendant that the act of killing the deceased then and there was wrong and forbidden would defeat his defense of insanity, if it were also legally proved that while he possessed such knowledge he did not possess the power to do or not to do the killing under the guidance of such knowledge."

*Held:* An irresistible impulse to commit an act which one knows is wrong or unlawful, if it ever exists, does not constitute the insanity which is a legal defense. The instruction was therefore properly refused. Whatever may be the abstract truth, the law never recognizes an impulse as uncontrollable which yet leaves the reasoning powers, including the capacity to appreciate the nature and quality of the particular act, unaffected by mental disease.

APPEAL from a judgment of conviction and from an order denying a new trial in the Superior Court of the City and County of San Francisco. FERRAL, J.

C. B. Darwin, for Appellant.

A. L. Hart, Attorney General, for Respondent.

McKINSTRY, J.:

The Court below charged the jury: "As a defense to this prosecution the defendant has interposed the plea of insanity. * * * 'Insanity,' as used in this sense, means such a diseased and deranged condition of the mental faculties as to render the person incapable of distinguishing between right and wrong in relation to the act with which he is charged."

The charge as given is substantially the law as laid down by Tindal, C. J., in the answers of the English Judges to the questions propounded to them by the House of Lords, after

the acquittal of McNaughton: " The jury ought to be told
\* \* \*   that to establish a defense on the ground of insan-
ity, it must be clearly proved that, at the time of committing
the act, the party accused was laboring under such a defect
of reason, from disease of the mind, as not to know the nat-
ure and quality of the act he was doing, or if he did know
it, that he did not know he was doing what was wrong.   The
mode of putting the latter part of the question to the jury
on these occasions has generally been, whether the accused,
at the time of doing the act, knew the difference between
right and wrong, which mode, though rarely if ever leading
to any mistake with the jury, is not, as we conceive, so accu-
rate when put generally and in the abstract, as when put
with reference to the party's knowledge of right and wrong
in respect to *the very act* with which he is charged."

Counsel for defendant asked the Court below to charge:
" The mere intellectual knowledge of right and wrong is not
enough to defeat a defense of insanity, unless with such
knowledge the defendant also has the volitional power to
choose the one instead of the other.   No thoroughness of
knowledge by the defendant that the act of killing the de-
ceased then and there was wrong and forbidden, would defeat
his defense of insanity, if it were also legally proved that,
while he possessed such knowledge, he did not possess the
power to do or not to do the killing under the guidance of
such knowledge."

It is evident from the case as presented, that the instruc-
tions requested refer to an entire absence of power of choice
which, it is assumed, may exist with a capacity to distinguish
between right and wrong as applied to the particular act.
There is no evidence tending to prove the existence of such
physical disease as, of itself, and separate from its effect upon
the mind, would deprive one of the control of his action, as
in the case of the " convulsive fit" spoken of by Sir James
Fitz Stephens.   (Digest of Criminal Law, note 1, p. 361.)
Such irresistible impulse to commit an act which he knows
is wrong or unlawful (if it ever exists), does not constitute
the insanity which is a legal defense.

How can such impulse be known to exist ?   Rolfe, B., in
summing up in *Reg.* v. *Stokes,* 3 C. and K. 185, said: "It is

true learned speculators, in their writings, have laid it down that men, with a consciousness that they were doing wrong, were irresistibly impelled to commit some unlawful act. But who enabled them to dive into the human heart and see the real motive that prompted. the commission of such deeds ?" And the learned Baron charged the jury, " Every man is held responsible for his acts by the law of this country, if he can discern right from wrong." And in *Reg.* v. *Haynes,* 1 F. and F., p. 666, Branwell, B., said: "It has been urged for the prisoner that you should acquit him on the ground that, it being impossible to assign any reason for the perpetration of the offense, he must have been acting under what is called a powerful and irresistible influence, or homicidal tendency. But I must remark as to that, the circumstance of an act being *apparently* motiveless, is not a ground from which you can safely infer the existence of such an influence. Motives exist unknown and innumerable which might prompt the act. A morbid and restless (but irresistible) thirst for blood would itself be a motive urging ·to such a deed for its own relief. But if an influence be so powerful as to be irresistible, so much the more reason is there why we should not withdraw any of the safeguards tending to counteract it. There are three powerful restraints existing, all tending to the assistance of the person who is suffering under such an influence— the restraint of religion, the restraint of conscience, the restraint of law. But if the influence itself be held to be a legal excuse, rendering the crime dispunishable, you at once withdraw a most powerful restraint—that forbidding and punishing its perpetration." We must, therefore, return to the simple question you have to determine—did the prisoner know the nature of the act he was doing; and did he know he was doing what was wrong ? The Reporter's head-note to this case contains the·statement: " The circumstance of the prisoner having acted under an irresistible influence to the commission of homicide no defense, if, at the time he committed the act, he knew he was doing what was wrong."

In *Reg.* v. *Barton,* 3 Cox C. C. 275, Baron Parke told the jury " that there was but one question for their consideration, viz., whether, at the time the prisoner inflicted the wounds which caused the death of his wife, he was in a state of mind

to be made responsible to the law for her murder. That would depend upon the question whether he, at the time, knew the nature and character of the deed he was committing, and, if so, whether he knew he was doing wrong in so acting. This mode of dealing with the defense of insanity had not, he was aware, the concurrence of medical men; but he must, nevertheless, express his decided concurrence with Mr. Baron Rolfe's views of such cases, that learned judge having expressed his opinion to be that the excuse of an irresistible impulse co-existing with the full possession of reasoning powers might be urged in justification of every crime known to the law, for every man might be said, and truly, not to commit any crime—except under the influence of some irresistible impulse. Something more than this was necessary to justify an acquittal on the ground of insanity, and it would therefore be for the jury to say whether, taking into consideration all that the surgeon had said, which was entitled to great weight, the impulse under which the prisoner had committed this deed was one which altogether deprived him of the knowledge that he was doing wrong."

It will be seen that the English . Courts have refused to recognize the co-existence of an impulse *absolutely* irresistible with capacity to distinguish between right and wrong with reference to the act. It can not be said to be irresistible because not resisted. Whatever may be the abstract truth, the law has never recognized an impulse as uncontrollable which yet leaves the reasoning powers—including the capacity to appreciate the nature and quality of the particular act—unaffected by mental disease. No different rule has been adopted by American Courts.

Judgment and order affirmed.

MORRISON, C. J., and ROSS, SHARPSTEIN, MYRICK, and MCKEE, JJ., concurred.