[No. 18199.   Department One.—February 15, 1894.]

AMANDA J. (FISKE) MARCEAU, RESPONDENT, *v.*
THE TRAVELERS' INSURANCE COMPANY,
ETC., APPELLANT.

CRIMINAL LAW—INSANITY AS A DEFENSE.—Insanity, as recognized in the
criminal law of this state, is such a diseased and deranged condition of
the mental faculties as to render the person incapable of distinguishing
between right and wrong in relation to the particular act with which
he is charged.

ID.—IRRESISTIBLE IMPULSE.—Irresistible impulse, so called, is not, of itself,
a legal defense to a charge of felony.

LIFE INSURANCE—DEATH CAUSED BY INSANE PERSON—EVIDENCE—RULING
WITHOUT PREJUDICE—ABSTRACT TESTIMONY OF EXPERT WITNESS.—In
an action upon a life insurance policy where the company seeks to avoid
liability upon the ground that the insured was killed by a third person,
and the plaintiff claims that the person doing the killing was insane at
the time he committed the deed, the allowance of a question asked an
expert on insanity as to whether he understood "that if a person is in-
sane while they may theoretically know the difference between right
and wrong, that they are incapable of judging or resisting an impulse
to do wrong?" to which the witness answered that "they have no power
to resist the insane impulse they have, although they know it was wrong,
and they will hide and conceal the evidence of their crime, very often
with more particularity and ingenuity than a sane person would do,"
is not prejudicial error, the testimony being in the abstract to a certain
phase or kind of insanity, and not addressed to the mental condition of
the person killing the insured.

ID.—OBJECTIONABLE QUESTION—HARMLESS ANSWER.—However objection-
able a question may be, if the answer in no way prejudices the appel-
lant's rights, error of the court in allowing the answer to be given is
harmless.

ID.—IMPROPER INSTRUCTIONS—ABUSE OF PLEA OF INSANITY.—In a civil
action upon an insurance policy, where the party who killed the insured,
and whose insanity is in question, is not a party to the action nor indi-
rectly interested in the final result of the litigation, an instruction to the
jury intimating that the plea of insanity has led to abuse in the admin-
istration of justice, and advising the jury that it must be examined and
considered with care, although proper in a criminal case, should not be
given.

ID.—EVIDENCE—CONVICTION OF MURDER—SANITY OF ACCUSED.—In the
civil action upon the insurance policy, the judgment-roll in the criminal
prosecution of the person who killed the insured, showing that he had
been convicted of murder and sentenced to life imprisonment, but which
contained no suggestions as to his insanity, is not admissible in evidence
on the part of the insurance company for the purpose of showing that
the accused could not have been insane at the time.

ID.—FACTS OBSERVED BY WITNESSES—WITHDRAWAL OF OPINION EVI-
DENCE.—Upon the question of insanity the statements of witnesses as to

the peculiar conduct and conversation of the person charged with insanity as observed by the witnesses, are competent evidence, although they are not intimate acquaintances within the meaning of section 1870, subdivision 10, of the Code of Civil Procedure, nor experts, whose opinions may be given upon the question of sanity or insanity; and the withdrawal of their opinions from the jury, does not carry with it their testimony as to the facts observed by them.

ID.—INSTRUCTION—INSANE IMPULSE—ACCIDENTAL KILLING OF INSURED PERSON.—Where the court in an action upon an insurance policy instructed the jury correctly as to the law of insanity in numerous portions of the charge, an instruction that if the person who killed the insured "was then impelled in so doing by an insane impulse, which the reason that was left to him did not enable him to resist, or to understand its nature, then the injuries were unintentional . . . . and accidental in that respect within the meaning of the policy," is to be construed as implying that he was incapable of weighing the moral qualities of the act, and determining therefrom whether it was right or wrong, and as causing no material injury to the defendant.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Edward Lynch*, for Appellant.

The court erred in permitting alleged expert witnesses to testify that a person is insane who theoretically knows the difference between right and wrong, but is incapable of judging or resisting an impulse to do wrong, and erred in so charging the jury. (*People* v. *Hoin*, 62 Cal. 121, 123; 45 Am. Rep. 651; *People* v. *Kernaghan*, 72 Cal. 622.) The court erred in refusing to give instructions on insanity, directly applicable to Stillman's case, absolutely necessary, because of erroneous testimony as to emotional insanity and irresistible impulse, and because of Stillman's proved capacity to distinguish right from wrong. (*People* v. *Pico*, 62 Cal. 54; *People* v. *Dennis*, 39 Cal. 637; *People* v. *Bumberger*, 45 Cal. 652.) The court erred in excluding evidence on behalf of the defendant tending to show that subsequent to the murder Stillman was not insane, this evidence being offered for the purpose of raising the presumption that at the time of the killing he was not insane. The record of his conviction should have been admitted for this purpose. (Pen.

Code, sec. 1201, subd. 1, 1367.)    The court erred in allowing numerous witnesses to testify for plaintiff concerning their opinions as to Stillman's mental condition who were not competent to give an opinion; because they were not medical experts, and because they were not intimate acquaintances under the provisions of the code.    (Code Civ. Proc., sec. 1870, subd. 10; *Goldstein v. Black*, 50 Cal. 464; *Estate of Carpenter*, 94 Cal. 406.) The attempted withdrawal of the so-called expert testimony did not cure the error in admitting it.    (*Schaeffer v. Kreitzer*, 6 Binn. 432; *Delaware etc. Canal Co. v. Carnes*, 31 Pa. St. 196, 197.)

*Dunne & McPike*, and *W. D. Grady*, for Respondent.

There was no error in the exclusion of the judgment-roll in the criminal prosecution against Stillman.    (Code Civ. Proc., sec. 1910; *Burke v. Wells, Fargo & Co.*, 34 Cal. 62; *Gridley. v. Boggs*, 62 Cal. 190.)    The court did not err in admitting opinions of the expert witnesses as to Stillman's insanity, but even if it did the error was cured by the withdrawal of the evidence.    (*Yankee Jim's U. W. Co. v. Crary*, 25 Cal. 504; *Ward v. Preston*, 23 Cal. 469; *People v. Majors*, 65 Cal. 138–49; 52 Am. Rep. 295.) The court did not err in admitting evidence of particular acts as relevant to the question of Stillman's insanity.    (*Waterman v. Whitney*, 11 N. Y. 157; 62 Am. Dec. 71; *Boylan v. Meeker*, 28 N. J. L. 274; *Bates v. Bates*, 27 Iowa, 110; 1 Am. Rep. 260; *Canada's Appeal*, 47 Conn. 450; *Colvin v. Worford*, 20 Md. 357; *Beaubien v. Cicotte*, 12 Mich. 459; *Thompson v. Updegraff*, 3 W. Va. 629; Schouler on Wills, sec. 242; *Rice v. Rice*, 14 Am. St. Rep. 831; *Estate of McDevitt*, 95 Cal. 17.)

GAROUTTE, J.—The plaintiff and respondent, Mrs. Marceau, was the wife of John D. Fiske, of Fresno. In July, 1890, Fiske was shot to death by one Stillman, who was subsequently convicted of the crime, and sentenced to imprisonment for life.    At the time of Fiske's death he was carrying a life insurance policy for the

sum of ten thousand dollars in the Travelers' Insurance Company, and this action is brought to recover from such company the amount of the policy. The policy contained a clause declaring it invalid if death resulted from "intentional injuries inflicted by the insured or any other person." And while the death of Fiske is not questioned by the defendant, it is claimed that his death resulted from causes that bring it within the prohibition of the clause of the policy we have just quoted, and that consequently plaintiff is not entitled to recover.

It is contended upon the part of plaintiff that Stillman was insane at the time he committed the homicide, and consequently the injuries resulting in the death of Fiske were not "intentional injuries," within the meaning of the policy. It is conceded by opposing counsel that if Stillman was insane at the time he fired the fatal shot the policy remains in full force and effect; and thus it appears the insanity of Stillman at the time of the homicide is the fulcrum upon which the entire case rests. Judgment went for plaintiff, and this appeal is prosecuted from that judgment, and also from an order denying defendant's motion for a new trial.

1. An expert witness upon the subject of insanity was placed upon the stand, and the following occurred:

"Q. You understand, of course, that insanity is the result of a diseased mind, do you not? A. Yes, sir.

" Q. That if a person is insane, while they may theoretically know the difference between right and wrong, that they are incapable of judging or resisting an impulse to do wrong?

" The defendant objected to the question, on the ground that it is incompetent, the witness is incompetent, and the fact is irrelevant and immaterial, as contradicting the rule of insanity established by the supreme court of this state. The court overruled the objection, and the defendant excepted.

"A. They have no power to resist the insane impulse they have, although they know it is wrong, and they

will hide and conceal the evidences of their crime, very often with more particularity and ingenuity than a sane person would do."

In *Hoin's Case*, 62 Cal. 120, 45 Am. Rep. 651, insanity, as recognized in our criminal law, is declared to be such a diseased and deranged condition of the mental faculties as to render the person incapable of distinguishing between right and wrong in relation to the particular act with which he is charged. The foregoing appears to be the true rule, as declared by the courts of England, and certainly is the settled law of this state, and we cannot recognize the so-called plea of irresistible impulse, of itself, as a legal defense to any charge of felony. Upon an examination of the particular question and answer now under consideration, we see nothing to justify a reversal of this judgment and a retrial of the case. Upon a close analysis of the question, we are not prepared to say exactly what it does mean. It certainly is not so clear as to be fully comprehended by the average jury of the present day; yet, whatever construction may be given it, and it is probably susceptible of more than one, the harm to appellant, if harm was done, is found in the answer. However objectionable a question may be, if the answer in no way prejudices appellant's rights, then the error of the court in allowing the answer to be given is harmless error, and affords no ground for complaint. By his answer the witness testified in the abstract to a certain phase or kind of insanity. His evidence was not addressed to the mental condition of the man Stillman, but was directed to principles touching a certain branch of insanity in general. In order that the jury might intelligently and fully understand the particular issue of insanity that was to be submitted to them, we see no possible objection to a practice of placing before them general information bearing upon this most metaphysical and abstruse subject. And, although the witness testified that a person might know a certain act to be wrong, and yet possess no power to resist an insane impulse to

commit the act, still it was for the court in its instruc-
tions to the jury to furnish the rule by which Still-
man's mental condition was to be measured.   The test
is inexorable; he is sane or insane, tried by that rule
alone, and all the evidence upon the subject of insanity
is pertinent, and pertinent only for the purpose of de-
termining whether or not the party's mental condition
satisfies the test prescribed.

2. Appellant complains of the court's refusal to give
two certain instructions.  The first of these instruc-
tions embraced the principle we have quoted from the
Hoin case as to the true rule to be applied upon a plea
of insanity in criminal cases, and it was substantially
given in various forms by the court in its charge to the
jury.   It was not error to decline to again reaffirm the
law bearing upon that question.   The other instruction
contains an intimation that the plea of insanity has led
to abuse in the administration of justice, and advises
the jury that it must be examined and considered with
care.    This instruction, in effect, was given in the
criminal case of *People* v. *Pico*, 62 Cal. 54, but we see
no place for it in a civil action, especially in view of
the fact that the party charged with being insane is
neither a party to the action, nor even indirectly inter-
ested in the final result of the litigation.

3. Previous to the trial of the present action Stillman
had been tried and convicted of the murder of Fiske,
and sentenced to imprisonment in the state prison for
life.   Defendant's counsel offered in evidence what he
termed the judgment-roll in that case, and under objec-
tion the evidence was not admitted.   As stated by coun-
sel, this evidence was offered for the purpose of showing
that during the pendency of the murder trial no pro-
ceedings were had indicating that Stillman was insane
at that time; that no suggestion was made to the court
by counsel that he was then insane; that the statute re-
garding the insanity of defendants at the time of trial
was not invoked, and that the record offered indicated
no suggestion of insanity; and counsel argues therefrom

that the presumptions arise from these facts, first, that the public officials did their duty, and also that the defendant's attorneys in that case did their duty, and that the plea of present insanity not being suggested, either by the public officials or private attorneys, the second presumption follows that Stillman was not insane at the date of his trial, and further, those presumptions being established, an additional presumption follows therefrom that if he was not insane upon the day of his trial he was not insane upon the day of the homicide. We are entirely agreed that the record in the criminal action was properly rejected. The last and material presumption, the one which defendant seeks to invoke to his advantage in this case, arises from no fact, but, on the contrary, is itself based upon a foundation of presumptions, and such a foundation is too unstable to support evidence of the character here sought to be invoked. Again, we think the plaintiff could not be prejudiced by anything done, or omitted to be done, in that case. She was not a party to the action, in no manner interested in the result of the litigation, and her pecuniary interests could in no way be affected by the result of that trial. A striking illustration of this principle is found in *Burke* v. *Wells, Fargo & Co.*, 34 Cal. 62. One Driscoll was convicted of robbing Wells, Fargo & Co. The parties arresting Driscoll brought an action against that company to recover a reward offered for the arrest and conviction of the thief. It was held by the court that, as against the defendant, Wells, Fargo & Co., that company being a stranger to the action, the record of conviction was no evidence that Driscoll was the thief, and that plaintiff should be required to establish that fact by independent evidence *de novo*. In the present case if, in accordance with the statute, the question of Stillman's insanity at the time of the trial had been suggested, and a jury impaneled to pass upon that issue, and, after investigation, the jury had rendered a verdict declaring him not insane, that verdict would not be evidence in this action against the plaintiff; and if a

verdict upon the direct issue would not be evidence here, it certainly follows that the record offered was properly rejected.

4. It is insisted that the court erred in allowing certain witnesses to give their opinions as to Stillman's insanity, because it is claimed they were not intimate acquaintances within the provisions of section 1870, subdivision 10, of the Code of Civil Procedure. The testimony of some of these witnesses to the extent of their opinion as to Stillman's insanity was subsequently stricken out upon motion of counsel offering the evidence, and inasmuch as the court at the time directed the jury to disregard such testimony of the witnesses, we see no valid objection to the course pursued. It is insisted that the evidence as to the conduct and conversations of Stillman, as testified to by these witnesses, also should have been taken from the consideration of the jury, but we do not understand the law to be that none but intimate acquaintances are allowed to testify to the peculiar conduct and language of a party charged with insanity. The right to give an opinion as to a person's sanity or insanity is limited to the expert and the intimate acquaintance, but the limitation goes no farther, and this distinction is recognized in the *Estate of Carpenter*, 94 Cal. 406, cited by appellant. Referring to matters, not of opinion, but merely of observation, it is there said: "As to such obvious appearances, I presume it was not intended that the rule should apply." The record is quite voluminous, and appellant has called our attention to but one witness, viz., Graham, who gave an opinion as to Stillman's insanity based upon an acquaintanceship with him. We have found no other in the record, and, as to Graham, there is no question but that he was an intimate acquaintance within the provision of the code, and also within the principles declared in the *Estate of Carpenter, supra.*

6. The following instruction is attacked as stating an unsound proposition of law:

"The court instructs you that if you believe from a

preponderance of the evidence that the said John D. Fiske came to his death by reason of injuries inflicted upon him by one J. L. Stillman, on or about July 26, 1890, in this county, and without fault or provocation on the part of said Fiske, and that the said Stillman at the time of inflicting said injuries was insane and incapable of discerning between right and wrong in regard to the act he was committing, *or* that he was then impelled in so doing by an insane impulse, which the reason that was left him did not enable him to resist, or to understand its nature, then the injuries were unintentional on the part of said Stillman, and accidental in that respect within the meaning of said policy." The latter portion of this instruction, beginning with the conjunction " or" does not strictly follow the beaten paths established by this court in declaring what constitutes insanity, and beaten paths are always safer than new and untried ones; and while, owing to the peculiar wording of the instruction, it is not probable that it in any degree enlightened the jury as to the law of the case, yet, upon a fair construction, we think it comes within the law of insanity, as legally applicable to the present case, and vaguely states in a different form the same principle found in the former portion of the instruction.   If a man commits a homicide under an insane impulse, and at the time does not possess sufficient reason to understand the nature of the act, he certainly is in such a condition of mind that he is incapable of weighing the moral qualities of the act, and determining therefrom whether it is right or wrong; and we think this to be its legitimate construction.   The instruction surely bears no relationship to the theory of irresistible impulse, frowned upon and rejected in *People* v. *Hoin*, 62 Cal. 120, 45 Am. Rep. 651, and does not, either in letter or spirit, countenance the doctrine, which is there cast out, as having no place in the law of insanity in this state.   In addition to this instruction, the court fully and correctly stated to the jury the law of insanity in numerous other portions of its charge, and

we are satisfied that no material injury resulted to defendant from the charge we have just considered.

7. We will not enter into a discussion of the evidence in detail for the purpose of indicating that it is sufficient to support the verdict of the jury. It is enough for us to say that upon a careful examination of it we find it ample and sufficient.

For the foregoing reasons it is ordered that the judgment and order be affirmed.

PATERSON, J., and HARRISON, J., concurred.

Hearing in Bank denied.

BEATTY, C. J., dissented from the order denying a hearing in Bank, and filed the following opinion on the 20th of March, 1894.

BEATTY, C. J. (dissenting).—I dissent from the order of the court denying a rehearing.

It is assumed in the opinion of Mr. Justice Garoutte, as it has been in the argument of counsel, that the same test is to be applied in determining whether the death of Fiske was caused by an injury intentionally inflicted within the meaning of this policy, as is applied to the plea of insanity in a criminal case. Accepting this proposition as embodying a correct statement of the law, it follows that unless the slayer of Fiske was of such unsound mind at the time of the killing as not to know the nature and quality of the act, or, in other words, so insane as not to know that it was wrong and criminal, then the injury was purposely inflicted notwithstanding the slayer may have been impelled to the act by an insane impulse which he had not the power to resist. For such is undoubtedly the law of this state as established by numerous decisions in criminal cases.

This being so, it could not fail to prejudice the defendant to allow evidence to go to the jury, over its objection, to the effect that there is a kind of insanity which our law does not recognize as an excuse for crimi-

nal acts. Such testimony was wholly uncalled for. It was for the court to inform the jury as matter of law what insanity is, and to confine their consideration to that species of insanity which the law recognizes. But the ruling admitting the evidence quoted in the opinion of the court over the defendant's objection was, in effect, a declaration to the jury that it was material for them to know, as bearing upon the issue to be found, that there is a kind of insanity other than that which determines responsibility for criminal acts. Such a ruling, unless subsequently cured by striking out the objectionable testimony, and instructing the jury unequivocally that they must wholly discard it from their consideration in making up their verdict, is, in my opinion, not only erroneous but highly prejudicial. And I think it is laying down a most dangerous rule, and one which must lead to serious abuses, to say, as the court does say, with reference to this testimony, that there is "no possible objection to a practice of placing before them (the jury) general information bearing upon this most metaphysical and abstruse subject." The aim and effort of courts ought to be to make the law, which jurors are to consider for the purpose of finding a verdict, as plain and simple as possible, and, to my mind, there exist the gravest possible objections to the admission of witnesses to testify to that which is purely matter of law, and especially when, as in this case, such testimony is, for all possible purposes of the trial, in direct conflict with the law governing the decision of the jury.

But the error of the superior court did not end with the admission of this testimony. So far from striking it out and instructing the jury to disregard it, the court charged the jury with respect to insanity, in the language quoted in the opinion of Justice Garoutte (6th paragraph). In this instruction two, possibly three, distinct hypotheses are stated, upon either one of which the jury are told they may find that the injuries to Fiske were unintentional, and one of these hypotheses clearly is the insane impulse theory, pure and simple.

The attempt in the opinion of the court to give to this part of the charge a meaning consistent with the doctrine of insanity, so clearly and so long established in the law of California, is, to my mind, a failure; and, even if the instruction were so obscure and unintelligible in its terms as to warrant us in assuming that the jury did not understand it in an objectionable sense because they could not understand it at all, the original error in the admission of the testimony as to insane impulse would remain uncured.

Because of the errors here briefly indicated, I think that the judgment and order of the superior court are erroneous, and should have been reversed.