[Crim. No. 217. In Bank.—July 28, 1898.]

## THE PEOPLE, Respondent, *v.* JAMES CREEGAN, and CHARLES BECKER, Appellants.

CRIMINAL LAW—EVIDENCE—CORROBORATION OF ACCOMPLICE.—Under section 1111 of the Penal Code, the testimony of an accomplice must be corroborated by other evidence which in itself, without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the crime charged; and the testimony of one accomplice cannot be deemed corroborated by that of another accomplice.

ID. — CHARACTER OF CORROBORATING WITNESS — QUESTION FOR JURY.— Whether a witness corroborating an accomplice was also himself an accomplice is a question of fact, to be determined by the jury, upon competent evidence.

ID.—PRESUMPTION—CONCLUSIVENESS OF VERDICT.—It must be presumed from a verdict of conviction based upon the testimony of a witness in corroboration of an accomplice, where the fact was in dispute whether such witness was also an accomplice, and the jury were properly instructed as to the corroboration required by section 1111 of the Penal Code, that the jury found that the witness was not an accomplice; and their verdict must be accepted as conclusive of the fact.

ID.—INCOMPETENT EVIDENCE—COMPLICITY IN FORGERY—ACQUITTAL—HEAR-SAY.—Upon the question whether a corroborating witness was an ac-

complice to a forgery charged against the defendants, evidence that the witness had been tried for complicity in the forgery, and had been acquitted thereof, is incompetent. Such evidence is hearsay, and has no legal tendency to show that he was not an accomplice in the crime, and its admission was prejudicial error.

ID.—OPINION OF ACCOMPLICE.—The testimony of the accomplice whose testimony was sought to be corroborated, that he did not consider that the corroborating witness was guilty of the forgery charges, is incompetent, and should be stricken out.

ID.—BASIS FOR COMPARISON OF HANDWRITING—INCOMPETENT EXPLANATION—SIMILAR OFFENSE.—Where a paper is introduced in evidence as a basis for a comparison of the handwriting of the defendant, upon a charge of forgery, evidence explaining the circumstances under which the paper was written is improperly received; and where such evidence tended to connect the defendant with a previous attempt to commit a similar offense, it is irrelevant and incompetent to establish the present charge.

ID.—INSUFFICIENT EVIDENCE OF COMPLICITY IN FORGERY.—The evidence reviewed, and held insufficient to sustain a conviction of one of the defendants of complicity in the forgery charged.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   William T. Wallace, Judge.

The facts are stated in the opinion of the court.

Dunne & McPike, for Appellants.

W. F. Fitzgerald, Attorney General, and C. N. Post, Deputy Attorney General, for Respondent.

HARRISON, J.—The defendants were convicted upon an indictment for forgery, and have appealed from the judgment. The forgery of which they were convicted was committed as follows, viz.: On the ninth day of December,1895.Frank L. Seaver, representing himself to be A. J. Scott, purchased from the Bank of Woodland a draft for twelve dollars upon the Crocker-Woolworth Bank of San Francisco, in favor of A. H. Dean.   Prior to this date—December 4th—he had deposited the sum of two thousand five hundred dollars with the Nevada Bank, and opened an account there under the name of A. H. Dean.   On the 17th of December he deposited with this bank the above draft, which in the meantime had been raised from twelve dollars to twenty-two thousand dollars, and had the same placed to his credit.   On the morning of the 18th he drew from the bank

twenty thousand dollars in gold coin, and on the succeeding day left the state. The defendants were indicted by the grand jury of San Francisco for this forgery, upon the ground that they were parties thereto.

· The principal witness on the part of the prosecution was Seaver, by whose testimony the defendants' connection with the crime was shown as follows: An agreement had been made in the city of New York, between the witness and the defendant Creegan, to come to California for the purpose of perpetrating some act of this kind, and, in pursuance thereof, they reached San Francisco in the latter part of November, 1895, and Seaver procured the draft in Woodland as above stated. On the eleventh day of December he returned to San Francisco, and, while on the Oakland boat gave the draft to Creegan, who told him that Becker was stopping at a hotel in Oakland, and that he would go back on the boat and give him the draft for the purpose of having it raised. On the 16th of December Creegan returned the draft to Seaver in its altered condition, telling him that it had been raised by Becker, and advising him to deposit it in the bank the next day. Seaver made the deposit, and at the same time drew out all the money which was previously standing to his credit. In the evening of that day he and Creegan, and one McCosta, arranged to meet the next morning for the purpose of drawing the money, and on the morning of the 18th they met at the corner of Third and Mission streets, where it was agreed by them that Seaver should go to the bank, draw the money and take it away, and that McCosta and Creegan should follow him for the purpose of seeing that no harm came to him. In pursuance of this arrangement Seaver hired a buggy, and with his office boy as a driver went to the bank—Creegan and McCosta standing outside—drew twenty thousand dollars upon his check, which was given to him in four sacks of five thousand dollars each, and placed them in a satchel which he put in the buggy. He then drove to a distant part of the town where he met McCosta, and they carried the coin to his room, where he took two of the sacks out of the satchel and gave them to McCosta to deliver to Creegan. McCosta testified that upon receiving the two sacks he went out of the house and met Creegan in the street, and together they

took a car for the ferry and went over to Oakland, where Cree-
gan took the money from him, ostensibly for the purpose of
placing it in a room, and shortly returned and gave him one
hundred dollars which he said Becker had sent him, and also
gave him a package which he requested him to take to New
York.

The connection of Creegan with the forgery depends upon
the testimony of Seaver and McCosta. Seaver was, by his own
admission, an accomplice, and in order to permit his testimony
to be considered by the jury it was necessary to have other
evidence which, in itself, without the testimony of Seaver,
tended to connect Creegan with the commission of the crime.
Section 1111 of the Penal Code is as follows: "A conviction
cannot be had on the testimony of an accomplice unless he is
corroborated by other evidence which, in itself, and without the
aid of the testimony of the accomplice, tends to connect the
defendant with the commission of the offense; and the corrobora-
tion is not sufficient if it merely shows the commission of the
offense, or the circumstances thereof." The testimony of Mc-
Costa is the link in the chain of evidence by which the prose-
cution sought to show that Creegan was implicated in the for-
gery, and to make the testimony of Seaver available against him.
But if McCosta was also an accomplice the jury would be re-
quired to disregard his testimony, equally with that of Seaver.
Whether he was an accomplice was, therefore, a vital fact to be
determined by the jury. The relation which it was shown he
bore to the transaction was such as to authorize the defendants
to claim that he was *particeps criminis*, while the prosecution
vigorously sought to resist this claim, and the jury were in-
structed by the court in accordance with the above provisions
of section 1111 of the Penal Code. It must be assumed from
the verdict that, upon the evidence before them, the jury found
that he was not an accomplice, and, if this evidence was prop-
erly received, their verdict must be accepted as conclusive of the
fact.

The defendants contend that the court improperly allowed
certain evidence to be introduced which influenced the jury
in their verdict, and that for this reason the verdict should
be vacated. While McCosta was on the witness stand he testi-

fied that after leaving the state in December he and Seaver had been arrested in Minneapolis, and brought back here for trial; whereupon the following questions were asked him by the counsel for the prosecution:

"Q. You were subsequently tried in this courtroom? A. Yes, sir.

"Q. For a complicity in this affair, or for forging this check? A. Yes, sir.

"Q. And were acquitted?

· "Mr. Dunne.—Objected to as incompetent, unadjudicated as against these defendants, and *res inter alios acta.*

"The Court.—Well, I will overrule the objection."

The defendants excepted to the ruling, and the witness thereupon answered, "Yes, sir."

The court manifestly erred in permitting this testimony to be given. One of the main questions to be determined by the jury was whether McCosta was an accomplice. This was a question of fact to be determined by the jury before whom the defendants were being tried (*People v. Bolanger,* 71 Cal. 17; *People v. Kraker,* 72 Cal. 459; 1 Am. St. Rep. 65); and they were entitled to have it determined upon only such evidence as was competent therefor. The conclusion that another jury had reached in another case, in which these defendants were not parties, was not competent evidence for the determination of this question. The statement of McCosta that he had been acquitted upon that trial had no legal tendency to show that he was not an accomplice in the crime. It was, in effect, merely saying to the jury that upon that occasion he had been told by twelve men, or had heard them say, that he was not guilty. That verdict of acquittal was at most but the declaration of the jury in that case, that upon the evidence presented to them they did not believe him to be guilty. What that evidence was, or what influences may have affected them in reaching that conclusion, was not shown. His acquittal may have resulted from the failure of the prosecution to introduce all the evidence that was introduced at the present trial, or it may have depended upon rulings of the court in regard to the weight to be given to the evidence before them. (See *Burke v. Wells, Fargo & Co.,* 34 Cal. 60; *People v. Mitchell,* 100 Cal. 328; *Mar-*

*ceau v. Travelers' Ins. Co.*, 101 Cal. 338.)  His acquittal in that case freed him from being again placed in jeopardy for the crime, and constituted a perpetual protection against any punishment therefor, but as against these defendants it did not create a legal status for him, or establish the fact that he was not an accomplice.

That the error was prejudicial to the defendants cannot be gainsaid.  Upon a controverted issue, to be determined by a jury, the fact that another jury had determined the same issue against the contention of the defendants would have great, if not controlling, influence, and the fact that the court permitted this evidence to be introduced, notwithstanding the objection of the defendants, would naturally incline the jury to the opinion that it was entitled to be considered by them as an element in determining the fact.  For similar reasons the court erred in refusing to strike out the testimony of the witness, Seaver, that he did not consider that McCosta was guilty of this forgery.

While Seaver was on the witness stand a writing was shown to him, and he stated that it was in the handwriting of Creegan, and was written in the room of the witness in the hotel at St. Paul, Minnesota.  The paper was then offered in evidence as a specimen of Creegan's writing, for the purpose of comparison with certain signatures alleged to have been made by Creegan. The witness was then asked upon what occasion this paper was written, and stated "it was a memoranda of extracts from the Bankers' Almanac, containing a list of suitable towns throughout Minnesota and Dakota which drew drafts on St. Paul and Minnesota, which Creegan wrote in my company, and while we were both examining the book we picked out the towns for the ———."  The defense objected to this question, and at the above point in the answer of the witness moved to strike out that part of the answer referring to the purpose for which they were examining the book.  Their objection to the question and the motion to strike out the answer should have been granted.  The object of introducing the writing was for a comparison with other alleged writings of the defendant, and the judge was required to be satisfied that the writing was genuine before he was authorized to admit it for this purpose.  (Code Civ. Proc., sec. 1944.)  The circumstances under which it was written in-

volved an issue which was irrelevant to the issue before the jury, and the testimony thereof was improperly received. To the extent that the testimony authorized an inference that Creegan and the witness had, several months subsequent to December, been engaged in an attempt to perpetrate a similar offense, it was irrelevant and incompetent to establish the present charge.

It is, moreover, contended on behalf of Becker that there was no evidence before the jury connecting him with the offense, or from which they were authorized to find him guilty, and we are of the opinion that this contention must be sustained. The only evidence by which Becker is connected with the transaction is the testimony of Seaver and McCosta, and the only testimony given by them which indicates his complicity in the crime are statements alleged to have been made to them by Creegan in the absence of Becker, and without his hearing. Neither of these witnesses had any personal acquaintance with Becker, or met or spoke to him at any time, nor was he seen by either of them, except that McCosta says that on one occasion he saw him on the opposite side of a street in Oakland. Nor is there any evidence in the case, except the testimony by these witnesses of Creegan's statements to them, that Becker ever knew of the draft or of its alteration, or of any of the circumstances connected therewith. The only direct evidence that was given respecting Becker is that at some time in the month of December he was at the Golden Eagle Hotel in Sacramento under an assumed name, and was afterward at the Galindo Hotel, in Oakland, under the same name, and that he and Creegan left Oakland together on the eighteenth day of December, under assumed names. This, moreover, is the only time in which Becker was shown to have been seen by Creegan while in the state. While these facts might corroborate any testimony having a legal tendency to establish his guilt, they have no connection with the alleged crime, and are not available by themselves as substantive evidence of such guilt.

About four months after the forgery was committed Becker and Creegan were arrested in Philadelphia while planning a trip to Guatemala, and some gold coin which was minted in San Francisco in 1895 was found upon their persons, and in the

room of Becker there was found a package called by the magistrate before whom they were examined a "forger's outfit," which it was claimed resembled the package that McCosta stated Creegan had requested him to carry to New York. McCosta did not testify that Creegan told him that the package came from Becker, nor was it shown that Becker ever saw the package that McCosta took to New York. Whether there ever was such a package depends upon the testimony of McCosta, but, if it be assumed that it was the same which Creegan gave to him, there is no evidence that Becker ever saw it prior to the time when he was in Philadelphia, and McCosta's description of the package which was given to him differs materially from that which was found in Becker's room. But admitting the existence of these facts, they would not in themselves, without the aid of the testimony of Seaver and McCosta, have authorized the jury to find a verdict against Becker. As the finding by the jury that Creegan was an accomplice must be vacated by reason of the admission of incompetent evidence, it cannot be used as a basis for holding that Becker is bound by his declarations, since we cannot assume that in the absence of this evidence the jury would have so found.

The judgment and order denying a new trial are reversed and a new trial ordered.

Garoutte, J., Temple, J., Henshaw, J., and Van Fleet, J., concurred.

Rehearing denied.