Morgan, J.,
dissenting:
I think the judgment of the lower court should be affirmed.
The agreed statement of facts, given in full in the majority opinion, upon which the case was tried, discloses that the insured received from the defendant a certificate of insurance on her life, designating’ her husband as beneficiary. That while he was of insane mind he inflicted *312 Wounds upon Ms wife that caused her death, and then took his own life, but as to which died first it is not definitely decided or stipulated. That plaintiffs are daughters and sole heirs of the insured, and sue by their guardian. That the defendant refused payment, under the terms of a printed provision on the back of the certificate, and contained, also, in the by-laws of the order, and made a part of the certificate pleaded in the defendant’s answer, as follows:
‘ ‘ MURDERED BY BENEFICIARY. If any memher shall be murdered by any beneficiary named in his or her certificate, or who may claim benefits thereunder, or should any beneficiary named in a member’s certificate, or who may claim benefits thereunder, directly or indireetly, intentionally or accidentally, cause the death of any such member, then the right of any such beneficiary to receive any benefits under the certificate held by such member shall revert to the Grand Circle. ’ ’
Now, in my opinion, it is not right, either from principle or authority, for the defendant to refuse to pay under this provision and under the agreed statement of facts. The defendant, in its answer, as a basis for its defense, after quoting the above provision from the by-laws, stated that the insured came to her death “as the result of wounds and injuries inflicted upon her by her husband with felonious and murderous intent, and that she was killed and murdered by her said husband.” The answer shows the interpretation put upon the provision by the defendant. The title of the provision and the answer of the defendant indicate clearly that it was inserted in the certificate to prevent any recovery thereupon by anyone who should take the life of the insured with felonious intent or with any intention of obtaining the money to be paid under it. The provision is apt in its terms and sufficiently clear to prevent anyone from reaping any benefit. by wrongfully taking the life, of the insured. The bene *313 ficent purposes of the order in insuring the lives of women will not permit any conception that the clause was inserted to deceive any of its members, and the large capitals entitling the by-law, “MURDERED BY BENEFICIARY,” too plainly disclose an intention not to deceive. We are compelled to meet, however, the contention on this appeal that the words used: “Cause the death of the insured, directly or indirectly, intentionally or accidentally,” were inserted under the above title for the purpose of defeating liability if the beneficiary should cause the death, even unintentionally, or while insane, and also' regardless of the entire absence of any purpose in so doing to reap a reward for such an act. This requires an examination of the authorities upon the construction of such clauses. It is stipulated in the agreed statement of facts that the husband was insane when he inflicted the wounds that caused his wife’s death, and then killed himself. Therefore, he was not guilty of murder, and could have had no purpose to obtain the money payable by the certificate, and consequently the aforesaid provision cannot be applied in this case. The heirs now claim the money, and they cannot, by any conceivable reason, be charged with having anything whatever to do with the death of the insured, but are wholly innocent in regard thereto; and it is so manifestly unjust that the purpose of the mother should be thwarted by a strict construction of this provision in favor of a forfeiture, that I cannot concur in the majority opinion.
The opinion in Head Camp, Woodmen of the World, v. Irish, 23 Colo. App., 85, 127 Pac., 918, 922, in regard to construction, generally, states:
“Mr. Niblack, in his work on Benefit Societies, on page 32, in regard to what construction should be given the by-laws of mutual benefit societies, says: ‘ The bylaws of mutual benefit societies should be construed liberally, and with a view to effectuate the benevolent pur *314 pose of their organization. Where there is any ambiguity or inconsistency in the terms of such by-laws, that construction should be given to them which is most favorable to the rights of the member.’ And, again, on page 625, he says: ‘ In actions on certificates of membership issued by mutual benefit societies designed to secure the payment of money to those dependent upon their members, after the death of such members, courts should construe the rules and regulations of such societies liberally to effect the benevolent objects of their organization.’ Mr. Bacon, in his work, in section 179, says: ‘It is also a rule of construction that where the language used is ambiguous or inaccurate, and susceptible of two interpretations, it shall be construed most favorably to the promisee in the obligation.’ And, again, in the same section, he says: ‘ It is also a familiar rule of law that if it be left in doubt, in view of the general tenor of the instrument and the relations of the contracting parties, whether given words -were used in an enlarged or restricted sense, other things being equal, that construction should be adopted which is most beneficial to the promisee.’ And, again, in the same section, he says: ‘Contracts of insurance, because they have indemnity for their object, are to be construed liberally, so as to give them effect, if possible. If the policy contains two provisions, one favorable to the assured and one unfavorable, they being inconsistent and contradictory, that provision most favorable to the assured will be accepted and the other disregarded. Only a stern legal necessity will induce such a construction as will nullify the contract. ’
“There are numerous decisions of this court and of our supreme court holding that, where an insurance policy is prepared by the party to be held liable under it, or where it contains doubtful provisions, or where a clause is susceptible of two constructions, that construction will be adopted which is most favorable to the insured. — At *315 lantic Ins. Co. v. Manning, 3 Colo., 224; State Ins. Co. v. Horner, 14 Colo., 391, 23 Pac., 788; German Ins. Co. v. Hayden, 21 Colo., 127, 40 Pac., 453, 52 Am. St. Rep., 206; Strauss v. Phenix Ins. Co., 9 Colo. App., 386, 48 Pac., 822; Lampkin v. Travelers’ Ins. Co., 11 Colo. App., 249, 52 Pac., 1040. And that certificates of insurance of benevolent associations should be interpreted the same as those of á mutual life insurance company. — Chartrand v. Brace, 16 Colo., 19, 26 Pac., 152, 12 L. R. A., 209, 25 Am. St. Rep., 235; Sup. Lodge, Knights of Honor, v. Davis, 26 Colo., 252, 58 Pac., 595. And that ‘it is also an inflexible rule that a policy of insurance must be liberally construed in favor of the insured, so as not to defeat, without a clear necessity, the claim to indemnity which, in mating the contract, it was his object to secure.’ — Northwestern Life Ins. Co. v. Tietze, 16 Colo. App., 205, 210, 64 Pac., 773, 775.”
Mr. Bacon, in his work on Benefit Societies, says, in sec. 329: “The question in all cases of this character is the proper interpretation of a contract, and the point of inquiry is, what obligations the parties must, from the language used, with relation to the subject-matter and the circumstances, be reasonably supposed to have intended to assume.”
And, in the same section, the learned author, discussing a clause in a benefit certificate relieving the order from liability in case the insured should commit suicide, while sane or insane, says: “The clause against suicide is clearly intended to protect the insurance company against the fraudulent act of the insured, whereby he may, even at the sacrifice of his own life, secure a benefit to those whom he may desire to favor, at the expense of the insurance company. But, as has already been said, it has been held from the earliest days that a suicide committed in consequence of insanity was not within the meaning of the condition, although within its literal terms. *316 The decisions establishing this doctrine were placed upon the ground that the death, though apparently caused by the act of the party, was not so caused in contemplation of law, because his mind did not concur in the act, his mental organs having been so diseased as to cease to control his actions, or to guide them in accordance with reason.”
It cannot be reasonably supposed that the parties to the contract intended that no recovery could be had by reason of anything done by the beneficiary while insane, as he could not be guilty of any fraudulent act, as Mr. Bacon says, “whereby he might, even at the sacrifice of his own life, secure a benefit to those whom he, might desire to favor.” If “suicide, committed in consequence of insanity, was not within the meaning of the condition” discussed by Mr. Bacon, then the killing of the insured, committed in consequence of insanity, was not within the meaning of the condition now under consideration. In the case of Mutual Life Ins. Co. v. Terry, 15 Wall., 580, 21 L. Ed., 236, the supreme court of the United States, distinguishing between suicide in the possession of ordinary reasoning faculties and suicide while insane, in reference to a clause in an insurance policy providing against liability in case the insured should ‘ ‘ die by his own hand, ’ ’ after a full review of all the cases, said: “If the death is caused by the voluntary act of the assured, he knowing and intending that his death shall be the result of his act, but when his reasoning faculties are so far impaired that he is not able to understand the moral character or general nature, consequences, and effect of the act he is about to commit, or when he is impelled thereto by an insane impulse, which he has not the power to resist, such death is not within the contemplation of the parties to the contract, and the insurer is liable.” — 2 Bacon on Benefit Societies, sec. 331; Clark v. Eq. L. A. Soc., 118 Fed., 374, 55 C. C. A., 200. Mr. Bacon further says, in the same sec *317 tion, “A construction which punishes a person who is not in fault is not to be favored, if it can be allowed at all. The very object of life insurance is to provide for death by disease or in the ordinary course of nature. Death by his own hands, in the case of one non compos, is as much the result of disease as death by fever or consumption. The act of an insane man is morally no more his act than if it were mechanical. ’ ’
Now, if such construction is given in cases where it is provided that an insured cannot recover if he die by his own hand, and the same construction be applied to the facts of the pending case, then the clause now under consideration would not prevent a recovery, for the reason that whatever was done by the beneficiary was done while he was insane. And his acts while he was insane were not within the contemplation of the parties to the contract, and the insurer is liable. It seems that such construction would, for a much greater reason, apply to the facts of the pending case, as the contract here was made with regard to the acts of the beneficiary, and not in regard to the acts of the insured herself. In the absence of judicial construction of 'a clause like the one now under consideration, we are compelled to take the construction given by the courts concerning clauses in insurance contracts inserted to avoid liability in case of suicide by the insured. Mr. Bacon, in volume 2, sec. 336, in regard to clauses against suicide, says:
“To avoid the effect of these decisions it has become customary with life insurance companies to insert in their policies a stipulation that the contract shall be void if the insured shall ‘die by suicide, felonious or otherwise, sane or insane,’ or ‘by suicide, sane or insane,’ or ‘die by his own act or hand, sane or insane.’ These conditions have been generally Upheld and successfully eliminate the element of suicide, so that no kind or degree of insanity will prevent the avoidance if the insured had the intent to do *318 the act, or realized the physical consequences of his act. This condition does not attach where there is an absence of intent, as in ease of an accident. Culpable negligence, as in taking an overdose of laudanum to relieve pain, will not vitiate the contract. Where the condition was that the policy should be void if the insured should die by his own act or hand ‘voluntary or otherwise,’ the latter word was held too vague and uncertain to cover a case where the insured took his own life while insane. In a case in Ohio, where the policy was to. be void if the insured ‘shall under any circumstances die by his own hand, ’ the court held that the words ‘under any circumstances’ should be disregarded as too general and indefinite.”
See, also, Seitzinger v. Modern Woodmen of America, 204 Ill., 58, 68 N. E., 478; Schmidt v. Northern Life Assn., 112 Ia., 41, 83 N. W., 800, 51 L. R. A., 141, 84 Am. St., 323.
It is concluded; from the authorities and from principle, that the insurer in this case did not intend by the words used in the certificate that it could deny liability if the beneficiary, while he was insane, should cause the death of the insured. If such had been the intention, the words “sane or insane” would have been inserted after the word “accidentally.” Furthermore, if the insurer had not intended that the provision should only apply to instances where the beneficiary, through a wrongful intent or felonious purpose, caused the death of the insured, it would not have entitled the clause “murdered by beneficiary.” It would not have begun the clause with the provision as to murder, and it would not have associated the words “cause the death of the insured, directly or indirectly, intentionally or accidentally” with the title and the clause above referred to. The maxim Noscitur a sociis applies, and if the insurer did not intend that these words above quoted should imply a felonious intent, or at least a wrongful intent, they would not have been so associated. If the words referred to were intended to apply *319 to the act of an insane beneficiary, they were certainly unfortunately selected, as the acts of an insane person would hardly fall within the meaning of the words used.
Aside from the intention of the parties as the best rule for the construction of such contract, there are other rules of construction that would prevent the insurerfrom avoiding liability by reason of this clause in the contract. When applied to the acts of an insane beneficiary, these words become ambiguous and uncertain, and in such cases the courts have held that the benefit should not be forfeited, because forfeiture is an odious doctrine, as stated by'Cunningham, J., in the case of Knights of Maccabees v. Pelton, 21 Colo. App., 185, 189, 121 Pac., 949. Ambiguous, indefinite and uncertain language should always be construed against the insurer, according to authorities heretofore cited. Again, if the insurer intended that the clause should apply to the act of an insane beneficiary, the selection of the word “cause” in the provision, where it is provided that if the beneficiary “cause the death of the insured,” was unfortunate, for the reason that it readily occurs to the ordinary mind that an insane person could not, at least, directly, intentionally, indirectly or accidentally, cause anything. The parties to this contract must have intended that the provisions thereof, in reference to the acts of the beneficiary, referred to persons of sound mind, and if they did not so intend, it would have been stated in plain words that such was not the intention.- A benevolent order such as this would not have permitted a clause to be shrouded in such indefinite and uncertain words as those used, especially in benefit certificates issued to a woman, in an order that was organized for the purpose of insuring the lives of women. — Woodmen of the World v. Gilliland, 11 Okla., 384, 67 Pac., 487. It is a surprise that the defendant permitted the basis of its defense as alleged in its answer to be abandoned in the briefs of counsel, and that it would attempt to defeat *320 the purposes of this certificate, by relying upon such a technical construction of this particular clause therein. The insurer well knew, from the multitude of decisions in reference to provisions ag'ainst liability for acts of the insane, that unless some words like “sane or insane” were inserted, it would have little hope to avoid liability, but would invite litigation. The only conclusion is that it never intended, itself, to provide against the acts of an insane beneficiary. Policies of insurance and benefit certificates are prepared by persons skilled and experienced in such matters.
Furthermore, this clause is ambiguous and indefinite, in another particular: It is uncertain whether it was intended that the heirs could not recover if the beneficiary named in the certificate caused the death of the insured, or only in case they caused it themselves. The clause provides that — ‘ ‘ should any beneficiary named in a member’s certificate, or (any beneficiary) who may claim benefits thereunder, (though not named in the certificate) * * * cause the death of any such member, then the rights of any such beneficiary (who caused the death) * * * shall revert to the Grand Circle.” Now, aside from the question as to who died first, the husband or the wife, no beneficiary’s rights revert except the one who caused the death. Those who now claim the benefits never caused the death, and their rights do not revert. Furthermore, it is not stipulated nor agreed as to which died first, and if the husband died before the wounds produced the death of his wife, his rights as a beneficiary died with him, and the right of the heirs immediately took effect. As it was not stipulated nor proved that the wife died first, this defense must fail, because the burden of proof was upon the defendant to prove sufficient facts to establish the conditions of the forfeiture relied upon.— German Am. Ins. Co. v. Hyman, 42 Colo., 156, 172, 94 Pac., 27, 16 L. R. A. (N. S.), 77; Loyal Mut. Co. v. Brown Co., 47 Colo., 467, 475, 107 Pac., 1098.
*321 Certainly it could not have been the intention to impute the wrong of a “beneficiary named in the certificate” to those who “may claim benefits thereunder,” and thus visit upon the innocent the sin of the g’nilty. And it would certainly be against public policy and common justice to permit the defendant to have the fund revert to it, and thus profit by the crime of the beneficiary named in the certificate, so long as these children live and claim it. If the beneficiary becomes ineligible, the heirs of the insured should have the fund. — Schmidt v. Northern Life Assn., 112 Ia., 41, 83 N. W., 800, 84 Am. St. Rep., 323, 51 L. R. A., 141; Doherty v. A. O. Hibernians, Etc., 176 Mass., 285, 57 N. E., 463; Munroe v. Providence, Etc., Assn., 19 R. I., 363, 34 Atl., 149, 29 Cyc., 162.
As suggested in the majority opinion, it is a wise provision that prevents the intentional taking of the life of an insured, and “removes the temptation from anxious expectants to bring about premature deaths of the insured, ’ ’ but are those words in harmony with the conclusion reached? They are in perfect harmony with my conclusion, that the provision was inserted for this purpose only, “to remove the temptation from anxious expect-ants,” but not-to defeat a recovery, by innocent heirs, because of the irresponsible act of an insane beneficiary, who killed himself,'thus annihilating any suspicion that he was an anxious expectant. The construction of this provision adopted by the majority opinion is disastrous in its effect. Under such construction, no recovery could be had by the heirs if a husband should attempt to catch a runaway horse carrying his wife to certain death, in case the horse should stumble over and kill the husband, and, falling, kill the wife; because, forsooth, the proviso says, if he “accidentally or indirectly cause the death,” the fund reverts to the Grand Circle. Further illustrations are unnecessary. The provision destroys itself unless it is given a reasonable construction- in harmony with the beneficent purposes of the order.