[Crim. No. 1964. Second Appellate District, Division One.—August 28, 1930.]

THE PEOPLE, Respondent, v. EFFIE REYNOLDS, Appellant.

Moses C. Davis and George E. Stoddard for Appellant.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

CONREY, P. J.—Upon conviction, defendant was sentenced to imprisonment for life. The sole ground of appeal, relied upon by the defendant, relates to the issue of fact raised by the plea of "not guilty by reason of insanity." She contends that the evidence, without conflict, proved that she was insane at the time when the offense was committed.

Trial by jury was duly waived. At the conclusion of the trial on the plea of "not guilty," it having been fully established and conceded that the defendant killed her husband, the court proceeded to hear evidence on the second plea. It was stipulated that all of the evidence taken on the first plea should be considered by the court on the plea of "not guilty by reason of insanity." The defendant then introduced the testimony of two physicians. These physicians gave to the court their opinion, based upon careful examination of the defendant, concerning the mental condition of the defendant at the time of the murder. Even on that testimony alone, it cannot successfully be maintained that the court's finding that the defendant was sane is without support in the evidence. For instance, Dr. Steele, after describing his investigations said: "I don't believe she was insane, no. . . . I think she was in an abnormal or unusual mental condition, but not insane." Q. "Did you think at that time that she could distinguish right from wrong in the medical sense or in the legal sense . . . ?" Ans. "Prob-

ably not right at the time. I believe she did afterwards."
(Reporter's Transcript, p. 172.) Again he said: "She was
not insane but she was acting probably without full con-
sciousness of just what she was doing, without thought. . . .
Without clear thought." On cross-examination: Q. "You
found no evidence of any mental disease that you could
diagnose?" Ans. "No, sir." Again (on page 175): "Now,
there is no question in your mind that at that time [imme-
diately after the homicide] she realized the nature and
quality and the consequences of her act, is there? . . ."
Ans. "I think she did, yes, sir."

The other expert witness, Dr. Parkin, could not find evi-
dence of any definite mental disease, or disease of the nerves
or brain of the defendant. Judging of the question on the
basis of defendant's own statements to the witness, he thought
that probably, when the homicide was committed, the de-
fendant's conduct was "motivated from the unconscious,"
and that at that time "her judgment was in abeyance."

 From the foregoing, it plainly appears that the de-
fendant was not of unsound mind, or insane, in any way
or degree that can relieve her from responsibility for the
crime committed by her. (*People* v. *Hoin*, 62 Cal. 120 [45
Am. Rep. 651]; *People* v. *Sloper*, 198 Cal. 238, 245 [244
Pac. 362], and cases there cited; 14 R. C. L., p. 598 et seq.)
While some of the statements in the testimony of these ex-
pert witnesses express an opinion (not very confidently
held), that the defendant, at the very moment of the act
of homicide could not "distinguish right from wrong," they
do not attribute this condition to any disease of the brain
or mind. In effect they do not go beyond a belief that,
assuming the truth of defendant's declarations, she was so
far carried away by her jealousy and passion that, for the
time being, she ceased to be guided by her judgment. This
all savors of the doctrine of "irresistible impulse," which
the law rejects as a defense.

The judgment and order are affirmed.

Houser, J., and York, J., concurred.